STATE of Wisconsin EX REL. Jesus ORTEGA, Jr., Petitioner-Appellant,

v.

Gary R. MCCAUGHTRY, Respondent-Respondent.

Court of Appeals

*No. 97–2972. Submitted on briefs June 9, 1998.—Decided August 6, 1998.*

(Also reported in 585 N.W.2d 640.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jesus Ortega, Jr.,* pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *David E. Hoel,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J. Jesus Ortega, Jr., appeals an order quashing a writ of certiorari which had been issued for the review of prison disciplinary proceedings against him. Ortega claims the circuit court erred in

affirming Warden Gary McCaughtry's decision to let stand the adjustment committee's finding that Ortega had disobeyed orders. In this appeal, Ortega argues: (1) there was insufficient evidence before the adjustment committee to find him guilty of the offense; (2) he was denied his right to the assistance of a staff advocate; and (3) he did not timely receive a copy of a police report relied on by the committee in finding him guilty. We reject Ortega's claims of error and affirm the circuit court's order.

## BACKGROUND

A social worker at Waupun Correctional Institution (WCI), prepared and submitted a conduct report charging Ortega with violating WIS. ADM. CODE § DOC 303.24 ("Disobeying Orders").[1] In the conduct report, the social worker alleged the following:

> On 1–13–97, I received a phone call from a social worker in Sheboygan County (Larry Samet) who informed me that the ex-wife of Jesus Ortega (Melissa Garcia) had received mail at her home address from inmate Ortega. Ms. Garcia is currently in the Victim Witness Protection Program. Per divorce decree and as being victim in Ortega's

---

[1] WISCONSIN ADM. CODE § DOC 303.24 provides as follows:

(1) Any inmate who disobeys any of the following is guilty of an offense:
 (a) A verbal or written order from any staff member, directed to the inmate or to a group of which the inmate is or was a member;
 (b) A bulletin which applies to the inmate and which was posted or distributed in compliance with s. DOC 303.08; or
 (c) Any other order which applies to the inmate and of which he or she has actual knowledge.

(2) An inmate is guilty of an offense if he or she intentionally commits an act which violates an order, whenever the inmate knew or should have known that the order existed.

offenses, Ortega was to only send mail to a P.O. Box number and mail was to only be to the children.

Ortega had been given a direct written *and* verbal order from me 8–29–96 and 9–11–96 respectively, to have no contact with Melissa Garcia (see attached).

Also attached is a police report from Sheboygan Police Dept. regarding Ms. Garcia's receipt of the mail from Ortega. Per police report, the mail was destroyed by them.

Ortega is in direct violation of 303.24–Disobeying Orders.

The August 29, 1996 document referred to in the conduct report contains an order from the social worker to Ortega directing him "to *not communicate* with [ex-wife, Melissa Garcia] again." (Emphasis in original.) The document also recites that Melissa's request was that Ortega not "write, call, or contact" her again, and it directs that he not attempt contact through third parties, particularly his children. A document entitled "Interview/Information Request" indicates that Ortega asked to meet with the social worker after receiving the August 29th order. The worker noted on the form that she met with Ortega on September 11, 1996, and told him: "Can send letters to kids in c/o their mother. No letters to her & no mention of her to kids."

The police report referred to in the conduct report was prepared by an officer of the Sheboygan Police Department who had interviewed Ortega's ex-wife, Melissa. She told the officer that she had received a Christmas card from Ortega bearing a personal message in handwriting she recognized as Ortega's. Melissa also informed the officer that she believed Ortega had obtained her current address from a "letter" that he had received from Sheboygan County Social Services relating to their son's involvement in

delinquency proceedings. The officer reports that he took possession of the greeting card, which had been mailed from "Doylestown WI on Dec. 16th of 1996," and subsequently destroyed the card because it "could not be used for any type of evidence." (According to the police report, there was apparently no "active restraining order intact" which could form the basis for criminal charges against Ortega concerning the written contact with Melissa.)

The conduct report was processed as a "major" violation, and Ortega was given a "Notice of Major Disciplinary Hearing Rights." *See* WIS. ADM. CODE § DOC 303.76. A staff advocate was appointed to assist Ortega in preparing his defense. *See* WIS. ADM. CODE § DOC 303.78. The advocate met with Ortega prior to the hearing and talked to him "for quite some time." The advocate stated at the hearing before the adjustment committee that he had a copy of the Sheboygan police report at the time of his meeting with Ortega but that Ortega had not requested a copy of it. At Ortega's request, a "Sgt. Otto" was also present as a character witness at the hearing, but the sergeant testified that he had "no knowledge of this incident."

Ortega gave both an oral and a written statement to the adjustment committee. In the written statement, he claimed his ex-wife had fabricated the story about receiving a card from him. He also claimed that the conduct report he received was defective because it was not accompanied by the "physical evidence" of the violation, that is, the greeting card his ex-wife allegedly received from him; that the Sheboygan police report should not be relied upon because it contained, and was itself, hearsay; and that he needed "an additional 14 or 21 day extension" to prepare for the hearing because he had not seen or read the Sheboygan police report.

Ortega also requested that a different staff advocate be appointed because his advocate had "a lot of hostility" and bias against him. After being shown a copy of the Sheboygan police report at the disciplinary hearing, Ortega offered the following in refutation: "She is not on my visiting list, how could I see her soon? I don't know where Doylestown is? That's where it is postmarked from. I think my ex-wife is being vindictive because I'm trying to get my son here with my family."

The adjustment committee gave the following reasons for its decision to find Ortega guilty of disobeying orders:

> We find the reporting officer credible. The inmate did not present any evidence to contradict the report other than to state that he did not write a letter to his ex-wife. We do not find the inmate credible. A card was turned over to the Sheboygan Police Department. We believe he sent the card through a 3rd party, thus the Doylestown postmark. Ortega received a copy of this report on 1–14–97, giving him ample opportunity to prepare for this hearing. Sgt. Otto has no knowledge of this incident.
>
> After a review of the conduct report, the inmate's statement, witness testimony and the evidence, we find that he intentionally disobeyed a verbal and written order to have no contact with his ex-wife by sending a Christmas Card to her through a 3rd party.

The committee imposed three days of adjustment segregation and ninety days program segregation as a sanction for the offense. Ortega appealed the committee's decision to McCaughtry. He challenged the sufficiency of the evidence to find him guilty because the greeting card or a copy of it had not been produced. He also asserted the lack of adequate assistance from

his appointed staff advocate, his failure to receive a copy of the Sheboygan police report prior to the hearing, and the denial of his request for additional time to prepare for the hearing.

McCaughtry remanded the matter to the adjustment committee for the purpose of "considering new evidence," and he directed that Ortega be given a copy of the new evidence prior to the hearing. The new evidence consisted of a copy of a delinquency petition which the Sheboygan County District Attorney had filed against Ortega's son in November 1996. Ortega had apparently been sent a copy of the petition at the time of its filing.[2] Melissa's address was blanked out in the caption on the first page of the faxed copy of the petition. An address, which appears to be that of Melissa's residence, is contained in the text on page two of the petition, however.

The adjustment committee convened to consider the new evidence on March 13, 1997. Ortega submitted a second written statement to the committee. This statement repeats some of Ortega's assertions from his earlier statement, and in it, he also demands that the greeting card be produced so that handwriting and fingerprint analyses could be performed. In the statement, Ortega also challenges the committee's reliance on the hearsay contained in the Sheboygan police report, but he does not address the significance, if any, of the newly produced delinquency petition. The committee concluded that "the new evidence submitted [is] irrelevant to the charge."

---

[2] It appears that McCaughtry's copy of the delinquency petition was faxed to WCI from the Sheboygan Police Department on February 21, 1997. The fax cover sheet states, "This was sent by the D.A. officer to Ortega."

Ortega appealed the committee's decision on remand to the warden. In his second appeal, Ortega again challenged the sufficiency of the evidence, asserting that the new evidence discredits the Sheboygan police report, in that it establishes that the "letter from social services" referred to in the police report did not reveal Melissa's address to Ortega because the address had been blanked out on the delinquency petition he received. Finally, he again complained of the failure to produce the greeting card in the disciplinary proceedings against him. McCaughtry affirmed the adjustment committee's decision, concluding as follows:

> No procedural errors. Proper consideration on all available evidence was properly given at rehearing. Facts support findings of guilt and penalty imposed. Records complete and correct.

Ortega then petitioned the circuit court for a writ of certiorari, which the court issued for a return of the record of the disciplinary proceedings. After reviewing the record, the circuit court affirmed the imposition of discipline and ordered the writ quashed. Ortega appeals the circuit court's order.

## ANALYSIS

### a. Standard of Review

Judicial review on certiorari is limited to whether the agency's decision was within its jurisdiction, the agency acted according to law, its decision was arbitrary or oppressive and the evidence of record substantiates the decision. *See Van Ermen v. DHSS*, 84 Wis. 2d 57, 63, 267 N.W.2d 17, 20 (1978). The scope of

our review on certiorari is identical to that of the trial court. We decide the merits of the matter independently of the trial court's decision. *See State ex rel. Hippler v. City of Baraboo*, 47 Wis. 2d 603, 616, 178 N.W.2d 1, 8 (1970). The evidentiary test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion the committee reached. *See State ex rel. Richards v. Traut*, 145 Wis. 2d 677, 680, 429 N.W.2d 81, 82 (Ct. App. 1988). "The facts found by the committee are conclusive if supported by 'any reasonable view' of the evidence, and we may not substitute our view of the evidence for that of the committee." *State ex rel. Jones v. Franklin*, 151 Wis. 2d 419, 425, 444 N.W.2d 738, 741 (Ct. App. 1989) (quoting *Nufer v. Village Bd.*, 92 Wis. 2d 289, 301, 284 N.W.2d 649, 655 (1979)).

Ortega argues that the trial court applied the wrong standard in reviewing his challenge to the sufficiency of the evidence before the adjustment committee to support a finding of guilt. The trial court, citing our decision in *Santiago v. Ware*, 205 Wis. 2d 295, 327–28, 556 N.W.2d 356, 368–69 (Ct. App. 1996), *review denied*, 207 Wis. 2d 284, 560 N.W.2d 273 (1996), *and cert. denied*, 117 S. Ct. 2435 (1997), applied the "some evidence" test to the evidence before the committee. *Santiago*, however, did not involve a review of prison disciplinary proceedings on certiorari. There, we reviewed a trial court decision awarding an inmate damages under 42 U.S.C. § 1983 for a violation of his constitutional right to due process. In the context of a constitutional due process claim, we concluded that if "some evidence" of guilt is presented at a prison disciplinary hearing, "that is sufficient evidence to satisfy

due process." *Id.*; *see Superintendent v. Hill*, 472 U.S. 445, 455 (1985). When reviewing a prison disciplinary decision on certiorari, however, a reviewing court is to apply the common law "substantial evidence" test described in the preceding paragraph. Since we apply the substantial evidence test de novo in this appeal, Ortega has not been prejudiced by the circuit court's application of a different standard.[3]

### b. Sufficiency of the Evidence

Ortega claims, correctly, that the only evidence before the adjustment committee that he sent the greeting card to his ex-wife was hearsay. The Sheboygan police report itself was an "out-of-court" statement by the reporting police officer, and it contained statements made to him by Melissa, both of which were offered for the truth of the statements. *See* § 908.01(3), STATS. Neither the officer nor Melissa testified before the committee. The administrative rule governing evidence at disciplinary hearings provides that the committee "may consider any relevant evidence, whether or not it would be admissible in a court of law." WIS. ADM. CODE § DOC 303.86(2)(a). The committee may, however, refuse to consider hearsay if it deems the evidence "not reliable." WIS. ADM. CODE § DOC 303.86(2)(b)1. The Appendix to WIS. ADM. CODE ch. DOC 303 provides the following guidance for those conducting disciplinary hearings:

> The main guidelines are that the hearing officer or committee should try to allow only reliable evidence and evidence which is of more than marginal rele-

---

[3] We do not decide, since we need not do so here, what differences may exist between the "some evidence" and the "substantial evidence" tests.

vance. Hearsay should be carefully scrutinized since it is often unreliable: the statement is taken out of context and the demeanor of the witness cannot be observed. However, there is no need to find a neatly labeled exception; if a particular piece of hearsay seems useful, it can be admitted.

■

Ortega cites no authority for the proposition that a prison disciplinary committee may not admit hearsay and rely upon it in finding an inmate guilty of a violation of prison rules, and we are aware of none. *See Wolff v. McDonnell*, 418 U.S. 539, 567–68 (1974) (confrontation and cross-examination in disciplinary proceedings against prison inmates present "great[ ] hazards to institutional interests" and are not constitutionally required). Thus, our inquiry must be whether reasonable minds could arrive at the committee's implicit conclusion that the statements of the Sheboygan police officer and Ortega's ex-wife were reliable. We conclude they could.

Ortega presents no basis for a conclusion that the Sheboygan officer fabricated any details of his interview with Melissa or his receipt and examination of the greeting card. The officer was acting on a complaint from a Sheboygan County social worker in an attempt to determine whether any criminal violation had occurred. His report was routinely prepared in the course of that investigation for review by his supervisors, and by prosecutors for possible use in commencing a criminal action. We conclude that the committee could reasonably find the information provided by the officer in the report to be worthy of belief.

Melissa may have had motives to fabricate her story, given that she had been divorced from Ortega and was apparently a victim of his prior criminal activ-

ities. Balanced against these facts, however, is information in the record before the committee indicating: (1) that Melissa had previously contacted the reporting social worker at WCI in August 1996, regarding Ortega's unwanted written communications; (2) that she had told both a Sheboygan County social worker and the Sheboygan police officer that she had received the card in question from Ortega; and (3) that there were provisions in the divorce judgment, and in expired restraining orders, which prohibited Ortega from having contact with Melissa. These facts support an inference that Ortega had engaged in a pattern of unwanted contacts with his ex-wife. We thus conclude the committee could reasonably rely on Melissa's statements that she received the card and that it bore handwriting she knew to be Ortega's.[4]

Ortega also complains that the physical evidence of his guilt, the greeting card, was never viewed by the committee, nor was it ever provided to him for inspection. There is no constitutional requirement that either be done. *See Robinson v. McCaughtry*, 177 Wis. 2d 293, 304, 501 N.W.2d 896, 900 (Ct. App. 1993) (inmate not entitled to procedural due process beyond requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974), which imposes no requirement for the production of

---

[4] As we have noted, the adjustment committee is not bound by the Rules of Evidence. Even if it were, however, Melissa's statement identifying the handwriting on the greeting card as Ortega's would not necessarily have been excludable on the grounds that she was not a handwriting expert. *See* § 907.01, STATS. (non-expert may testify in the form of an opinion if "rationally based on the perception of the witness"); and § 909.015(2), STATS. (non-expert opinion admissible to identify handwriting if "familiarity not acquired for purposes of the litigation").

physical evidence). Ortega, however, cites WIS. ADM. CODE § DOC 303.66(2), which requires the staff member who prepares a conduct report to include "[a]ny physical evidence . . . with the conduct report," and § DOC 303.76(1), which requires that the inmate be given a copy of the conduct report. These rules, however, do not require the staff member to procure physical evidence if it is not in his or her possession, nor does it create a duty of production or a right of inspection. We agree with McCaughtry that the non-availability of the greeting card, although regrettable, is attributable to no fault of the reporting staff member, the committee or McCaughtry, and thus it provides no basis to set aside the committee's decision. We have concluded above that the committee could reasonably rely on the statements of the police officer contained in the Sheboygan police report, which include the officer's statement that he inspected and then destroyed the greeting card, believing it to have no future evidentiary value.

Finally, Ortega asserts that the adjustment committee wrongly concluded at the remand hearing that the fax copy of the November 1996 delinquency petition was "irrelevant to the charge." He argues that the document proves that he did not obtain Melissa's address from the petition because the address had been blanked out in the caption, and thus it undermines the credibility of Melissa's statement in the police report regarding the possible source of his knowledge as to her address. We disagree. Melissa's statement in the police report refers to a "letter from social services" regarding the delinquency proceedings as the source of Ortega's knowledge of her address, not the delinquency petition. The committee could reasonably conclude that just

390

because Melissa's address had been blanked out on the face of the delinquency petition sent to Ortega, that does not mean he did not receive other correspondence regarding the matter which contained the address. Moreover, as McCaughtry notes in his brief, had the committee deemed the petition relevant and considered it, the document would not have been exculpatory because it appears to contain Melissa's address on the second page.

In summary, we conclude that the facts found by the committee are supported by a reasonable view of the evidence, and thus, "we may not substitute our view of the evidence for that of the committee." *See State ex rel. Jones v. Franklin*, 151 Wis. 2d 419, 425, 444 N.W.2d 738, 741 (Ct. App. 1989). The committee had substantial, and therefore sufficient, evidence before it upon which to find Ortega guilty of disobeying orders. The only evidence Ortega offered to refute the charge against him was his own statement that he did not send the greeting card to his ex-wife. The committee did not find his statement credible. The weight and credibility of the evidence before it is a matter for the adjustment committee to determine, and so long as there is substantial evidence to support the committee's decision, we will not disturb it. *See Van Ermen*, 84 Wis. 2d at 64, 267 N.W.2d at 20.

### c. Assistance of Staff Advocate

Ortega next complains that he was denied the assistance of a staff advocate because the advocate assigned "did nothing to help [him] understand the charges or prepare a defense." He cites *State ex rel. Meeks v. Gagnon*, 95 Wis. 2d 115, 289 N.W.2d 357 (Ct. App. 1980), as authority for his assertion that he is entitled to a staff advocate who will independently

investigate the charge against him in an effort to find exculpatory evidence. In particular, he claims the advocate assigned did not contact or interview his ex-wife or the Sheboygan police officer.

Ortega's reliance on *Meeks* is misplaced. We note first that a constitutional due process right to a staff advocate arises only where an inmate is illiterate or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. We agree with McCaughtry that Ortega has shown himself to be far from illiterate. He provided several, multi-page written statements to the adjustment committee and McCaughtry during the administrative proceedings in this case, and he prosecuted this matter pro se in the circuit court and in the appeal to this one. Neither is there reason to believe on this record that Ortega did not understand the charge against him, or that he was unable to comprehend the proceedings or defend himself. Indeed, Ortega was successful in obtaining a remand hearing from McCaughtry so that the committee might consider "new evidence" he had procured.

In *Meeks*, we expressly considered five issues, none of which encompassed an inmate's right to have the assistance of a staff advocate during disciplinary proceedings or the standards for rendering that assistance. *See Meeks*, 95 Wis. 2d at 118–19, 289 N.W.2d at 360–61. With respect to the investigation of charges against an inmate, our concern was the adjustment committee's duty to ensure that an adequate investigation has been done. *See id.* at 125–26, 289 N.W.2d at 364. We pointed to the administrative rule which requires the appointment of a staff advocate to

assist an inmate charged with a major violation as an implicit indication that "some investigation" of the charges is necessary. *See id.* at 126, 289 N.W.2d at 364.

Although we concluded in *Meeks* that the investigation that had been conducted by the staff advocate was "adequate," despite the advocate's not having interviewed all of the witnesses the inmate desired, *see id.*, we did not hold that the advocate is under a duty to investigate the pending charges. Rather, our conclusion was simply that "some investigation is necessary before a disciplinary committee can make a factual determination sufficient to meet the minimum due process requirements laid down by *Wolff.*" *Id.* Here, an investigation was conducted by the staff member who first became aware of a possible violation of prison rules. She described in the conduct report her conversation with the Sheboygan County social worker and submitted with the report the documents she had obtained which detail the violation.

The absence of a constitutional underpinning, however, is not fatal to Ortega's claim that he was denied the assistance of a staff advocate. An agency must follow its own procedural rules, and we will review on certiorari a claim that it has not done so. *See State ex rel. Staples v. DHSS*, 136 Wis. 2d 487, 493–94, 402 N.W.2d 369, 373 (Ct. App. 1987). Our inquiry is directed to whether the rules applicable to the assistance of inmates by staff advocates in prison disciplinary proceedings were followed in this case. WISCONSIN ADM. CODE § DOC 303.78(1) provides that the superintendent of each correctional institution must make staff members available to "serve as advocates for inmates in disciplinary hearings." Advocates are either assigned by the superintendent to inmates who request them, or, in some circumstances, an

inmate may choose an advocate from a list of three staff members who are available to serve in that capacity during a given week. *See id.* If an assigned advocate "has a known and demonstrated conflict of interest in the case," the superintendent must assign a different staff member to serve as the inmate's advocate. *Id.* The advocate's duties are described as follows:

> The advocate's purpose is to help the accused to understand the charges against him or her and to help in the preparation and presentation of any defense he or she has, including gathering evidence and testimony, and preparing the accused's own statement. The advocate may speak on behalf of the accused at a disciplinary hearing or may help the accused prepare to speak for himself or herself.

WIS. ADM. CODE § DOC 303.78(2).

The nature and extent of a staff advocate's assistance to an inmate is seldom reflected in the administrative record returned to the circuit court on certiorari from prison disciplinary proceedings. Thus, review of a claim such as Ortega's is often not possible. *See State ex rel. Irby v. Israel,* 95 Wis. 2d 697, 703, 291 N.W.2d 643, 646 (Ct. App. 1980) (reviewing court may not consider matters outside the record on certiorari). We decline, however, to fashion a procedure akin to the postconviction evidentiary hearing required when a Sixth Amendment claim of ineffective assistance of counsel is raised with regard to criminal proceedings. *See State v. Machner,* 92 Wis. 2d 797, 802–04, 285 N.W.2d 905, 907–09 (Ct. App. 1979). As we have noted above, unlike the effective assistance of counsel during criminal proceedings, the assistance of an advocate in prison disciplinary proceedings is constitutionally required under only very limited circumstances which are not present here.

On certiorari, even absent a claim of constitutional dimension, a reviewing court must determine whether an agency has "acted according to law," and, as we have noted above, this inquiry may encompass whether the agency followed its own procedural rules. We acknowledge that when a reviewing court concludes a record returned on certiorari is not "sufficient to demonstrate that the proceedings before it were procedurally proper," the court may vacate the administrative decision and remand the matter for supplementation of the record. *State ex rel. Lomax v. Leik*, 154 Wis. 2d 735, 740–41, 454 N.W.2d 18, 20–21 (Ct. App. 1990). In *Lomax*, the deficiencies in the record involved whether the department complied with its rules for proceedings for transferring inmates between institutions (e.g., requirements for advance notice of the review hearing and of the facts and criteria to be considered). *See id.* at 738–39, 454 N.W.2d at 20. These types of procedural requirements constitute the "minimal due process or fair play standards" that apply in many administrative proceedings, and a reviewing court may properly expect the administrative record to show that the agency has complied with them. *See id.* at 740, 454 N.W.2d at 20–21.

The same is not true, however, regarding a staff advocate's performance of duties under WIS. ADM. CODE § DOC 303.78(2), a matter which is only collateral to the conduct of disciplinary proceedings themselves. Consistent with our holding in *Lomax*, we conclude that a record of disciplinary proceedings should reflect whether an inmate requested the assistance of a staff advocate, and if so, that one was provided to him or her, in order to sufficiently "demonstrate that the proceedings . . . were procedurally proper." *Lomax* at 740, 454 N.W.2d at 21. The record before us makes this showing,

and there is thus no basis for a remand. If an inmate believes that an advocate appointed to assist him has failed to perform the duties outlined in WIS. ADM. CODE § DOC 303.78(2), and wishes to preserve the issue for purposes of judicial review, the inmate bears the burden of clearly presenting for the record before the adjustment committee the basis for the claim. An inmate may also pursue a claim that he or she was denied the proper assistance of a staff advocate via the Inmate Complaint Review System, thereby directing administrative attention to, and providing a more specific record of the grounds for, an inmate's complaints regarding his or her advocate.[5] *See* WIS. ADM. CODE § DOC 310.08, as amended, effective May 1, 1998.

It is undisputed that an advocate was appointed for Ortega, that the advocate met with Ortega prior to his first disciplinary hearing, and that the advocate attended Ortega's disciplinary hearing.[6] Ortega does not claim that he required any assistance in understanding the charges against him. Nor does he claim that he requested his advocate to speak for him at the

---

[5] There is no indication in the record that Ortega pursued his complaint regarding the lack of assistance from his staff advocate via the Inmate Complaint Review System. McCaughtry does not argue in this appeal, however, that Ortega has waived this claim or that he has failed to exhaust his administrative remedies regarding his claim of denial of the assistance of an advocate. We note that the disciplinary proceedings currently under review predate recent revisions to WIS. ADM. CODE ch. DOC 310 ("Complaint procedures").

[6] Our focus is on the first disciplinary hearing inasmuch as the adjustment committee reviewed the evidence and made its guilty finding at that hearing. The remand hearing was for the limited purpose of considering the faxed copy of the delinquency petition. It appears the committee did only that and did not revisit any other issues in the case during the second hearing.

disciplinary hearing or to prepare his written statement, or even to assist him in either of those endeavors. Rather, Ortega's grievance against his advocate, as we have noted above, is the advocate's alleged failure to "help in the preparation and presentation" of his defense by "gathering evidence and testimony." *See* WIS. ADM CODE § DOC 303.78(2). There is no indication in the record, however, that Ortega requested his advocate to make contact with his ex-wife or the Sheboygan police officer, which he now cites as the basis for his claim that he was denied the assistance of an advocate. To the contrary, the record indicates that the advocate informed the adjustment committee that Ortega had not even requested him to provide Ortega with a copy of the Sheboygan police report.

The present record provides no basis for us to conclude that the requirements of WIS. ADM. CODE § 303.78(2) were not met, and thus we reject Ortega's claim of error based on that rule.

Although we conclude that, given a proper record, a court may review on certiorari an inmate's claim that the requirements of WIS. ADM. CODE § 303.78(2) were not followed, we emphasize again that we do not elevate the status of such a claim to that accorded a defendant's claim that his or her Sixth Amendment right to effective assistance of counsel was violated during criminal proceedings. Neither do we endorse any effort to inject the elements of a deficient performance analysis, similar to that employed in ineffective assistance of counsel claims, into the consideration of whether the department has complied with the staff advocate rule.[7] As the Supreme Court noted in *Wolff,*

---

[7] *See, e.g., State v. Machner,* 92 Wis. 2d 797, 802–04, 285 N.W.2d 905, 907–09 (Ct. App. 1979). We note, however, that a parallel to the "prejudice prong" of ineffective assistance of

"[t]he insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals." *Wolff*, 418 U.S. at 570. The same can be said for any effort to demand of staff advocates compliance with requirements beyond those set forth in the administrative rule. McCaughtry characterized the rule in his brief as specifying duties of a staff advocate that are "limited" and "general," and asserted that the rule "afford[s] the advocate a great deal of discretion in carrying out those duties." We concur in that assessment.

*d. Failure to Receive Police Report Prior to Hearing*

Ortega's final claim is that his due process rights were violated because he did not receive a copy of the Sheboygan police report prior to the disciplinary hearing. As we have noted above, WIS. ADM. CODE § DOC 303.66(2) directs a staff member who files a conduct report against an inmate to include "[a]ny physical evidence . . . with the conduct report." Ortega argues that since he must be given a copy of the conduct report prior to the disciplinary hearing, *see* WIS. ADM. CODE § DOC 303.76(1), "all evidence that is included with the conduct report must be provided" to him at the same time he receives the conduct report and notice of hearing rights. We disagree.

---

counsel analysis may be relevant here. WISCONSIN ADM. CODE § DOC 303.87 provides as follows:

> If a procedural requirement under this chapter is not adhered to by staff, the error may be deemed harmless and disregarded if it does not substantially affect the rights of the inmate. Rights are substantially affected when a variance from a requirement prejudices a fair proceeding involving an inmate.

To satisfy the constitutional right of due process, an inmate must be given "advance written notice of the claimed violation." *Wolff*, 418 U.S. at 563. The notice must be given to the inmate at least 24 hours prior to the disciplinary hearing, and it must "inform him of the charges and . . . enable him to marshal the facts and prepare a defense." *Id.* at 564. We conclude that receipt by an inmate of the conduct report itself in advance of the hearing satisfies this requirement. Under WIS. ADM. CODE § DOC 303.66(2), the conduct report must "describe the facts in detail," including what witnesses have told the reporting staff member, and it must "list all sections which were allegedly violated." The conduct report charging Ortega with disobeying orders, a copy of which was given to him nine days prior to his hearing, complies with these requirements. (*See* the Background section of this opinion, above, where we quote the conduct report at length.)

Neither is there an administrative requirement that an inmate be given copies of statements or access to evidence submitted in support of charges contained in a conduct report prior to the disciplinary hearing. WISCONSIN ADM. CODE § DOC 303.86(3) permits an adjustment committee to consider the written statement of a witness who "is unavailable to testify." The Appendix to ch. DOC 303 indicates that this rule "contemplates that the statement and the identity of the maker will be available to the accused."[8] The adjust-

---

[8] The definition of "unavailability" in the rule, although expressed in terms of inmates and staff members, generally provides that a person who is not present within the institution at the time of the hearing is deemed "unavailable" to testify. *See* WIS. ADM. CODE § DOC 303.86(3), which defines "[u]navailability" as "death, transfer, release, hospitalization,

ment committee met this expectation when it provided Ortega a copy of the Sheboygan police report during the hearing and allowed him to review and respond to the information it contained. As with his claim of denial of the assistance of a staff advocate, we cannot conclude on this record that Ortega's due process rights were violated, or that applicable administrative rules and procedures were not followed, with regard to his receipt of the police report.

## CONCLUSION

For the reasons discussed above, we affirm the circuit court's order upholding the imposition of prison discipline and quashing the writ of certiorari.

*By the Court.*—Order affirmed.

or escape in the case of an inmate; death, illness, vacation, no longer being employed at that location, or being on a different shift in the case of a staff member."