State of Wisconsin ex rel. Richard Winters, Petitioner-Appellant,
v.
Gary R. McCaughtry, Respondent-Respondent.
No. 04-1055.
Court of Appeals of Wisconsin.
December 23, 2004.
Before Deininger, P.J., Dykman and Lundsten, JJ.
¶ 1 PER CURIAM.
Richard Winters appeals an order dismissing his certiorari action for review of a prison disciplinary decision. He raises twenty-two separate points in his brief, some of which overlap. For the reasons discussed below, we reject each of Winters' alleged errors and affirm.

BACKGROUND
¶ 2 Winters was issued a conduct report for inciting a riot, contrary to WIS. ADMIN. CODE § DOC 303.18.[1] Two confidential informants provided statements under oath stating that Winters had agreed to participate in the riot and was a key player or assistant in planning it. A third confidential informant provided a statement that did not mention Winters, but corroborated other aspects of the statements by the first two confidential informants.
¶ 3 Winters requested permission to submit statements from seventeen named inmates, plus the three confidential informants, who he claimed would confirm that he had not discussed plans for a riot. Only the first two of the named inmates were allowed to present statements.
¶ 4 Winters himself also submitted a written statement to the adjustment committee in which he denied the accusations, challenged the sufficiency of the evidence against him, and complained that his advocate had failed to help him prepare his statement, gather specific information, or file his witness request form.
¶ 5 At the hearing, the reporting correctional officer, Captain Bruce Muraski, testified that Winters had admitted being a member of the Spanish Cobra gang. Muraski also testified that two confidential informants had heard Winters recruiting people for a planned riot. The adjustment committee found Winters guilty on the riot charge, specifically finding Muraski credible and noting that the confidential informant statements corroborated one another. The committee also found that the advocate had fulfilled her duties.
¶ 6 Winters exhausted his administrative remedies, then sought certiorari relief in the circuit court. The circuit court denied relief and dismissed the petition. This appeal followed.

DISCUSSION
¶ 7 Our review of administrative proceedings is confined to the administrative record. WIS. STAT. § 227.57(1) (2001-02).[2]
The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise in violation of a constitutional or statutory provision; but the court shall not substitute its judgment for that of the agency on an issue of discretion.
WIS. STAT. § 227.57(8). We shall not substitute our judgment for that of the agency as to the weight of the evidence on any disputed finding of fact, so long as the fact is supported by substantial evidence in the record. WIS. STAT. § 227.57(6). In addition, when an agency has been charged by the legislature with administrative duties and has expertise in that area, such as the DOC has in prison disciplinary matters, we will accord the agency's legal conclusions great deference and will uphold those conclusions so long as they are reasonable, even if an alternate determination would have been more reasonable. See generally Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 660-61, 539 N.W.2d 98 (1995).
¶ 8 Although the issues on this appeal might be more logically organized, for the sake of convenience we will address them as presented by Winters.

(A) Whether the Staff Advocate Fulfilled Her Duties Under the Administrative Code 

¶ 9 Winters sent his staff advocate a written list of twelve things he wanted her to do for him. Winters complains that she directed him to handle some of the tasks himself, including interviewing potential witnesses and preparing his own statement.
¶ 10 Due process does not require that an inmate be afforded assistance from an advocate for a disciplinary proceeding unless the inmate "is illiterate or ... `the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" State ex rel. Ortega v. McCaughtry, 221 Wis. 2d 376, 392, 585 N.W.2d 640 (Ct. App. 1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 570 (1974)). There is nothing in the record here to suggest that Winters is illiterate or was unable to present the evidence necessary for adequate comprehension of his case without assistance.
¶ 11 This court may nonetheless consider whether the certiorari record shows that the requirements of the Wisconsin Administrative Code were followed. Ortega, 221 Wis. 2d at 393. The Code provides:
[T]he advocate's purpose is to help the accused inmate to understand the charges against the inmate and to help in the preparation and presentation of any defense the inmate has, including gathering evidence and testimony, and preparing the inmate's own statement. The advocate may speak on behalf of the accused inmate at a disciplinary hearing or may help the inmate prepare to speak.
WIS. ADMIN. CODE § DOC 303.78(2). The duties of a staff advocate set forth in this code provision are limited and general in nature, and the advocate has a great deal of discretion as to how to discharge them. Ortega, 221 Wis. 2d at 398. It is not necessary for an advocate to provide a level of assistance comparable to that of counsel in a criminal setting. See id. at 397. Given the broad standard and the great deference we afford to prison disciplinary decisions, we cannot conclude it was unreasonable for prison officials to determine that the efforts made by Winters' staff advocate were sufficient to fulfill her duties. She discussed the charges with Winters and appeared before the committee.

(B) Whether There Was "a Directed Verdict"

¶ 12 Winters cites Finney v. Mabry, 455 F. Supp. 756 (E.D. Ark. 1978), for the proposition that due process bars high prison officials from ordering guilty verdicts in disciplinary proceedings and suggesting certain punishments to the adjustment committee. Winters then argues that the guilty verdict in his case must have been "directed" because the adjustment committee used identical language in its decisions for several other conduct reports arising out of the same incident. As the State points out, however, there is no showing that the standard language adopted by the committee was prepared in advance of the disciplinary hearings, or that the language was developed by anyone other than committee members. In any event, we see nothing that would prevent the adjustment committee from using standard language to address recurring issues.

(C) Whether Winters Received All of the Evidence Prior to the Hearing 

¶ 13 Winters alleges that prior to the hearing he was not given Captain Muraski's credentials or a copy of his own C-120 (which he says an inmate needs to pay to obtain a copy of), both of which are mentioned on the DOC 84 form as evidence relied upon by the committee. There is no administrative requirement, however, that an inmate be given copies of statements or access to evidence submitted in support of conduct report charges prior to a disciplinary hearing. Ortega, 221 Wis. 2d at 399. Provision of the conduct report is sufficient to put an inmate on notice of the general basis for the charges against him. Winters certainly could have reviewed the materials when they were presented at the hearing.

(D) Whether the Adjustment Committee Adequately Explained Why It Gave More Weight to Evidence Against Winters Than to Evidence for Him 

¶ 14 The reasons for a committee's decision need not be lengthy or detailed, but should allow a reviewing court to understand them without having to guess. See State ex rel. Meeks v. Gagnon, 95 Wis. 2d 115, 124-25, 289 N.W.2d 357 (Ct. App. 1980). In a case where the charge is straightforward, a statement that a committee relied upon the written report of a reporting officer's eyewitness account is sufficient to satisfy due process. Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir. 1987). Here, the committee explained that it found Captain Muraski credible due to Muraski's training, experience, and knowledge.

(E) Whether the Adjustment Committee Ever Deemed the Confidential Informants to Be Credible

¶ 15 Winters alleges that the committee failed to make credibility findings with regard to the confidential informants, and that it could not properly rely upon their statements without making such findings. We note, however, that the committee indicated in its decision that it considered the three confidential informant statements to be corroborated by each other. That comment appears to be an explanation for why the committee found the reports credible, even if the committee did not explicitly state its credibility findings.

(F) Whether the Conduct Report Was Supported by Any Evidence

¶ 16 Winters notes that the adjustment committee decision failed to list Captain Muraski's testimony or the confidential informant statements among the evidence it relied upon. Winters claims that without that testimony and those statements there was no evidence of his guilt. Given the reasons the committee gave for its decision, we suspect the failure to list Muraski's testimony and the confidential informant statements in the evidence section of the form was merely an oversight. In any event, however, we are satisfied that the conduct report which the committee said it relied upon was itself sufficient to support the committee's verdict. The conduct report gave Muraski's account and also related the relevant content of the confidential informant statements.

(G) Whether Winters Was Given Proper Notice of the Hearing

¶ 17 Winters claims that the notice of hearing form he was given was ambiguous and did not adequately inform him of the time limits for the hearing. However, the form has already been held sufficient to inform an accused inmate of his rights in compliance with WIS. ADMIN. CODE § DOC 303.76(1). See Bergmann v. McCaughtry, 211 Wis. 2d 1, 6, 564 N.W.2d 712 (1997).

(H) Whether an Extension of the Hearing Date Violated the Twenty-One-Day Rule

¶ 18 Winters claims the twenty-one-day rule set forth in WIS. ADMIN. CODE § DOC 303.76(3) was violated because the security director authorized an extension of the hearing date. We need not address Winters' arguments as to the legitimacy of the extension provision contained in that section, however, because the record shows that Winters' hearing was in fact held on the twenty-first day after Winters was given his copies of the conduct report and his hearing rights.

(I) Whether Winters Should Have Been Given a Written Decision at the Hearing

¶ 19 Winters complains that he was not given a written decision until over a month after the hearing. However, the administrative code permits the adjustment committee to postpone giving its decision until after the hearing, and there is no time limit given for providing a written decision. WIS. ADMIN. CODE § DOC 303.76(6)(e) and (f).

(J) Whether the Confidential Informant Statement Summaries Were Ambiguous and Hid Valuable Information 

¶ 20 Winters complains that the statements of the confidential informants do not reveal where the informants were housed. He contends this information would be valuable in assessing the likelihood that the informants would have been in a position to observe Winters participating in the planning of the riot, since inmates in different areas of the prison do not share recreation times. It was clearly proper for prison officials to refuse to disclose where the confidential informants were housed, since that could give a clue to their identities and place them in danger. The failure to disclose that information did not prevent Winters from arguing that he had no opportunity to confer with the other individuals who were named as leaders by the confidential informants. Nor did the nondisclosure to Winters prevent the committee members, who did know where the confidential informants were housed, from considering the informants' ability to observe Winters.

(K) Whether There Was Information to Corroborate the Confidential Informant Statements

¶ 21 Winters complains that the confidential informant statements were not corroborated by outside evidence. That is immaterial, however, since the committee found that the statements were corroborated by one another.

(L) Whether Winters' Sentence Was Predetermined

¶ 22 Because six other inmates involved in planning the riot received the exact same punishment Winters received, justified by substantially identical language, Winters alleges that his sentence must have been predetermined. Again, however, the fact that the committee chose to treat cases arising out of the same incident in the same manner does not mean that the committee had already chosen the punishment before it heard the cases. It is both common and permissible to have standard language to apply to similar situations.

(M) Whether Captain Muraski's Credentials Were Ever Given

¶ 23 Winters asserts that Captain Muraski's credentials were not given at the hearing. Winters' assertion is belied by the record, however, which plainly shows that a written summation of Muraski's credentials was presented to the committee.

(N) Whether Winters' Witnesses Were Denied Without Adequate Reason

¶ 24 Winters claims that the adjustment committee improperly denied his requests to have witnesses present at the hearing and to submit over twenty witness statements. However, WIS. ADMIN. CODE § DOC 303.81(1) limits an inmate to presenting two witnesses, "[e]xcept for good cause." Here, the two witnesses whose presence Winters requested had been transferred and were not available. The committee properly permitted Winters to submit written statements from them. WIS. ADMIN. CODE § DOC 303.81(4). The committee also reasonably determined that Winters had failed to show good cause for submitting cumulative statements from other witnesses. Statements from additional witnesses who may never have heard Winters discussing the riot would not have directly contradicted the statements of those who did.

(O) Whether Winters' Witnesses Were Improperly Denied By the Adjustment Committee Rather Than the Security Director

¶ 25 Winters claims that his request for witnesses was not submitted to the security director, as required by WIS. ADMIN. CODE § DOC 303.81. However, the administrative code also defines "security director" to include the security director's designee. WIS. ADMIN. CODE § DOC 303.02(18). Winters has not established that the proper authorization to delegate review of witness requests was not given here.

(P) Whether Winters Was Given an Opportunity to Refute the Correctness of Allegations in the Conduct Report

¶ 26 Winters claims he was not given an opportunity to refute the allegations in the conduct report. To the extent that he bases this argument on his prior complaints regarding the lack of witnesses at the hearing, we have already addressed the issue. We further note that the record contains Winters' own written statement, which certainly advised the committee of his disagreement with the allegations in the conduct report.

(Q) Whether the Adjustment Committee Was Biased

¶ 27 Winters claims that the committee must have been biased against him because it rejected his allegations of procedural errors and ignored evidence in his favor. Adverse rulings, in and of themselves, do not evince bias. There is no indication that any of the committee members had any personal involvement in the case or other improper motivation. Indeed, the fact that the committee acquitted Winters on the other charge against him tends to show that the committee was in fact capable of reviewing the evidence impartially.

(R) Whether the Adjustment Committee Gave Adequate Reasons to Support Its Decision

¶ 28 This assertion by Winters rehashes his prior arguments regarding the lack of any credibility determination regarding the confidential informants, and does not merit further discussion.

(S) Whether There Was Any Evidence that Winters Was Involved in Anything

¶ 29 Winters claims that the Waupun Correctional Institution movement policies clear him, and that there were no staff eyewitnesses, no incident reports filed, and no weapons found. His arguments boil down to an attempt to have this court reweigh the evidence. That is not our function on certiorari review. Quite simply, the committee was not obligated to attach the same significance to these points as Winters does, and could properly deem the statements from the confidential informants to be more persuasive.

(T) Whether the Confidential Informants Were Given Transfers in Exchange for Their Statements

¶ 30 Winters alleges that the confidential informants lied in order to get out of Waupun Correctional Institution. Since Winters does not even know their identities, this allegation is entirely speculative. Captain Muraski testified that the witnesses had not been offered anything, and there is nothing to the contrary in the record.

(U) Whether the Credibility of Winters' Witnesses Was Ever Established

¶ 31 Winters complains that the committee never made explicit factual findings regarding the credibility of his witnesses. Such findings were not required, however, since the statements of Winters' witnesses did not directly contradict any of the evidence of Winters' guilt. In other words, the fact that some inmates never heard Winters discussing the riot does not contradict the testimony of the confidential informants that they did hear him discussing the riot.

(V) Whether There Was Any Evidence to Point Towards Winters' Guilt

¶ 32 Finally, Winters alleges that there was no evidence of his guilt and that the "cookie cutter conduct reports" suggest that the real motivation behind his adjudication was to remove all of the gang members from the general population. Again, the conduct report and confidential informant statements did provide evidence of Winters' guilt, and there is nothing in the record to support the motivation suggested by Winters. We see nothing improper in prison officials handling a number of conduct reports arising from related events in a coordinated manner.
By the Court.  Order affirmed.
NOTES
[1] The conduct report also charged Winters with group resistance, but he was acquitted on that charge.
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.