COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP70**

Cir. Ct. No. 2018CV1819

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN EX REL. ERICH L. VLACH,

PETITIONER-APPELLANT,

V.

BRIAN HAYES ADMINISTRATOR, DIVISION OF HEARINGS AND APPEALS,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Erich L. Vlach appeals an order of the trial court which upheld a decision by the Division of Hearings and Appeals (DHA) revoking

Vlach's probation. DHA found there to be credible evidence supporting each of the alleged violations of the terms of Vlach's probation, and that there were no appropriate alternatives to revocation. Vlach argues that DHA's decision was arbitrary and capricious and represented its will rather than its judgment, and that it failed to consider viable alternatives to revocation.

¶2 Upon certiorari review, the trial court upheld DHA's determination. We affirm.

## BACKGROUND

¶3 In July 2016, Vlach pled no contest to two charges of fourth-degree sexual assault. Both charges involved Vlach touching the breasts of two victims while they were either asleep or unconscious. The trial court sentenced Vlach to 120 days in jail as to the first count; as to the second count, the court imposed and stayed a consecutive eight-month jail sentence and placed Vlach on probation for two years.[1]

¶4 As a condition of his probation, Vlach was required to participate in sex offender treatment and counseling. Additionally, Vlach was not permitted to have contact with his mother because it was determined that Vlach had previously had sexual contact with her. Furthermore, Vlach was prohibited from accessing the internet, including Facebook.

---

[1] Although Vlach has completed his probation sentence, he argues that this appeal is not moot because pursuant to his judgment of conviction, the revocation of his probation rendered him ineligible for the expungement of this conviction. The State concedes this point.

2

¶5      On December 15, 2016, Vlach was taken into custody for violating the no contact rule with his mother, as well as the rules prohibiting unapproved internet use and Facebook access. Vlach served a short sanction for the violations and was released on December 27, 2016. He went directly to his mother's house after being released, immediately violating the same condition of his probation for which he had just been sanctioned. He was again taken into custody and received a sixty-day sanction from the trial court. He was released on March 14, 2017.

¶6      Shortly after Vlach was released from that sanction, his probation agent conducted a home visit and found Vlach in possession of a smart phone, a violation due to its capability of accessing the internet. The phone was confiscated. Approximately two weeks later on April 1, 2017, Vlach violated his curfew and was taken into custody.

¶7      After those violations, Vlach was given the option of entering into an alternative to revocation agreement (ATR). That ATR, executed on April 7, 2017, contained specific conditions such as completing community service requirements and complying with all of the terms of his probation. However, in May 2017, Vlach twice violated the terms of the ATR by not participating in community service as required and by violating his curfew. Then on June 7, 2017, he reported to his probation agent's office with a photo of one of his victims in his possession, taken while she was sleeping, just prior to his assault of her. He was taken into custody and discharged from his sex offender therapy group for this incident. However, revocation of Vlach's probation was not pursued; instead, he was given the option of signing an amended ATR and was allowed to rejoin his therapy group.

¶8 In September 2017, Vlach was discharged from his sex offender treatment group for "continued lack of progress[.]" He was assessed as having risk factors that required "a more intensive level of [s]ex [o]ffender [t]reatment that can only be offered in an institution setting." This termination from treatment constituted a breach of his amended ATR. Vlach was taken into custody and probation revocation proceedings were commenced.

¶9 A hearing was held before Administrative Law Judge Martha C. Carlson of the DHA on November 28, 2017. The specific violations that were alleged as grounds for revocation were (1) his curfew violation in April 2017; (2) his possession of a smart phone; (3) his possession of a photo of one of the victims; (4) his discharge from his therapy group after he was found with the photo of the victim; (5) his termination from treatment in September 2017; and (6) his failure to comply with the amended ATR.

¶10 ALJ Carlson found that all of these allegations had been established by a preponderance of the evidence. She also noted that Vlach had already been granted two ATRs, but had "failed to comply with either" and, as such, was a "very poor risk to comply" with any further ATRs. Therefore, ALJ Carlson found that "[c]onfinement [was] necessary" for Vlach, and revoked his probation.

¶11 Vlach appealed that decision to Brian Hayes, the administrator of DHA, who sustained ALJ Carlson's decision. Hayes observed that in addition to Vlach's many rule violations, he had also disclosed eight additional victims, assaulted in a manner similar to the victims in this case.

¶12 Hayes further noted that Vlach had been evaluated by two psychologists who differed in their diagnoses of his mental health issues: one found that he had autism spectrum disorder, while the other diagnosed him with

narcissistic personality disorder. Vlach had argued that the latter "incorrect" diagnosis had "caused inaccurate assessments of his risk and treatment needs." Nevertheless, Hayes stated that Vlach's failure to comply with his ATR and his termination from sex offender treatment rendered him "too high-risk to remain in treatment in the community." Thus, Hayes agreed that revocation was necessary "to prevent undue depreciation of the seriousness of [Vlach's] conduct and to ensure protection of the public."

¶13 Vlach then petitioned the trial court for a writ of certiorari challenging DHA's decision. Vlach argued that DHA acted arbitrarily and capriciously because it did not take into consideration any further alternatives to revocation, and that its decision disregarded the law. Vlach further asserted that he did not have adequate notice of the rules that he was alleged to have violated.

¶14 The circuit court held that DHA's decision was reasonable and supported by substantial evidence, and that it was made according to law and was not arbitrary and capricious. It therefore affirmed DHA's decision. This appeal follows.

## DISCUSSION

¶15 "The decision to revoke probation rests within the sound discretion of [DHA]." *State ex rel. Lyons v. DHSS*, 105 Wis. 2d 146, 151, 312 N.W.2d 868 (Ct. App. 1981). Accordingly, the scope of judicial review by certiorari of a probation revocation is limited to certain inquiries: "(1) [w]hether [DHA] kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make

5

the order or determination in question." ***Van Ermen v. DHSS***, 84 Wis. 2d 57, 63, 267 N.W.2d 17 (1978) (citation omitted).

¶16    Vlach argues that DHA's decision was arbitrary and capricious, and that DHA disregarded the law in making its determination. These are questions of law that we review *de novo*, *see* ***State ex rel. Riesch v. Schwarz***, 2005 WI 11, ¶14, 278 Wis. 2d 24, 692 N.W.2d 219, and we "decide the merits of the matter independently of the trial court's decision," *see* ***State ex rel. Ortega v. McCaughtry***, 221 Wis. 2d 376, 385-86, 585 N.W.2d 640 (Ct. App. 1998).

¶17    In an appeal that "challeng[es] a revocation decision … the probationer bears the burden of proving that the decision was arbitrary and capricious." ***Von Arx v. Schwarz***, 185 Wis. 2d 645, 655, 517 N.W.2d 540 (Ct. App. 1994). "An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion." ***Id.*** at 656. A discretionary decision has been properly reached if it "contemplates a reasoning process based on the facts of record 'and a conclusion based on a logical rationale founded upon proper legal standards.'" ***Id.*** (citation omitted).

¶18    Our inquiry into DHA's exercise of its discretion reviews whether its conclusion was based on "substantial evidence[.]" ***Id.*** "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." ***Id.*** (citation omitted). The substantial evidence test is met if DHA's findings are "'supported by any reasonable view of the evidence[.]'" ***Ortega***, 221 Wis. 2d at 386 (citations and internal quotation marks omitted). This court "'may not substitute our view of the evidence for that of [DHA].'" ***Id.*** (citations omitted).

¶19    DHA found that there was substantial evidence to support all six of the probation violations against Vlach as alleged.  With regard to the first violation—returning to his residence after his curfew of 4:00 p.m. on April 1, 2017—this violation was established via GPS monitoring.  Vlach initially claimed he was "confused" about his curfew time.  However, Vlach's probation agent explained that Vlach had texted her around 3:00 p.m. that day to request a schedule extension, but it was a Saturday and Vlach's agent was not working, so she therefore had not responded.  The agent asserted that Vlach knew his schedule had not been changed and thus was not confused, but rather chose not to comply with his curfew.  Vlach subsequently admitted to this violation upon his execution of the first ATR.

¶20    The violation relating to Vlach's possession of a smart phone stems from the rule prohibiting him from accessing the internet without prior authorization from his agent.  Vlach initially denied that the smart phone was his, telling his probation agent that he only had an approved Blackberry.  He then admitted the smart phone was his, but lied about being able to access the internet on it.  A subsequent search of the phone revealed that its internet history had been cleared, and that Vlach had been using that phone since December 2016.  Vlach admitted to this violation when he signed the first ATR.

¶21    As for Vlach's possession of the photo of one of his victims, DHA maintained that this was a violation of the rule that required Vlach to "[a]void all conduct which … is not in the best interest of the public welfare or [his] rehabilitation."  Vlach's possession of this photo is certainly not in the best interest of the public welfare—especially the welfare of that victim.  Moreover, this presents a rehabilitation issue because, based on his psychological reports, Vlach has demonstrated a failure to recognize the harm he caused his victims and was to

7

work on developing empathy for them. Vlach admitted to this being a violation of his probation when he signed the amended ATR.

¶22    That violation led to Vlach's discharge from sex offender group therapy, the fourth violation alleged. Although Vlach was subsequently allowed to rejoin the group, he admitted in the amended ATR to the violation of being unsuccessfully discharged from sex offender treatment.

¶23    Violations five and six relate to Vlach's ultimate termination from sex offender treatment in September 2017. The reason—as cited in the Sex Offender Discharge Summary, submitted as evidence—was Vlach's lack of progress. He continued to demonstrate a lack of empathy for his victims; in fact, he wrote an essay on why he despised one of his victims. It had also been observed that Vlach was "exhibiting signs of denial" and had "heightened risk factors." Therefore, DHA found that the Discharge Summary, together with the credible testimony of Vlach's probation agent, were sufficient to prove these violations.

¶24    In sum, DHA found that there was substantial evidence to support all of the violations alleged. After reviewing the record, we conclude that this is a "'reasonable view of the evidence.'" *See Ortega*, 221 Wis. 2d at 386 (citations and internal quotation marks omitted).

¶25    DHA then went on to assess, based on this substantial evidence regarding his violations, whether revocation of Vlach's probation was justified. It is well established that revocation is justified if one of the following criteria has been met:

> (i)    confinement is necessary to protect the public from further criminal activity by the offender; or

> (ii)    the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii)    it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 544, 217 N.W.2d 641 (1974) (citation omitted).

¶26    DHA found that all three criteria had been met here. It noted Vlach's repeated and continued violations of his probation rules and both ATRs. It acknowledged that Vlach had been diagnosed with mental health issues, but stated that "these conditions do not excuse Mr. Vlach from following his rules of community supervision." Therefore, under all of the circumstances surrounding this matter, DHA found that confinement was necessary to protect the public. It further found that Vlach "could very well" benefit from further sex offender treatment, and that such treatment would be "best provided in a confined setting to ensure that Mr. Vlach remains available for and compliant with treatment." Finally, it found that not revoking Vlach's probation would unduly depreciate the seriousness of these violations.

¶27    We agree with this analysis. The Sex Offender Program Report, completed when Vlach was terminated from treatment, explained that despite his regular attendance at group therapy, Vlach still blamed his victims for his offenses and portrayed himself as the victim. He also minimized and rationalized his behavior while diminishing the effects it had on his victims, and refused to accept feedback during his therapy sessions. The group therapist found that these behaviors indicate a high risk of reoffending, which led to Vlach's discharge from group therapy with the recommendation for a more intensive level of treatment in confinement. Furthermore, regardless of the differing diagnoses from the two

psychologists who examined Vlach, both agreed that Vlach is not impaired in a manner that would prevent him from conducting himself lawfully in society.

¶28 Vlach also argues that DHA did not consider alternatives to revocation. In exercising its discretion, DHA "should consider alternatives that are available and feasible." *Von Arx*, 185 Wis. 2d at 656. The record clearly indicates that DHA did so. ALJ Carlson stated that there were no appropriate alternatives to revocation due to the therapist's recommendation of more intensive treatment, as well as Vlach's repeated violations, noting that Vlach had previously been given two ATR's but "failed to comply with either, demonstrating that he is a very poor risk to comply with any further [ATRs]." Hayes stated that Vlach's failure to complete sex offender treatment and his repeated violations made him "a risk to the community," agreeing that another ATR would not be appropriate and that revocation was necessary.

¶29 In short, DHA's decision to revoke Vlach's probation was based on its application of the proper legal standard—the *Plotkin* criteria—to the facts of the case. *See Plotkin*, 63 Wis. 2d at 544.

¶30 Additionally, Vlach argues that he did not have adequate notice that two of the alleged violations—possessing a smart phone and possessing a photo of one of his victims—were violations of the terms of his probation. In the first place, Vlach failed to raise this issue before DHA, and has therefore waived the right to raise it in this appeal. *See State v. Outagamie Cty. Bd. of Adjustment*, 2001 WI 78, ¶55, 244 Wis. 2d 613, 628 N.W.2d 376 ("Ordinarily an appellate court will not consider issues beyond those properly raised before the administrative agency, and a failure to raise an issue generally constitutes a waiver of the right to raise the issue before a reviewing court."). Furthermore, Vlach's

argument fails on the merits; we have already concluded that there was substantial evidence to support these violations as alleged, and further, Vlach admitted to these violations upon executing his two ATRs.

¶31 Vlach also makes a claim of ineffective assistance of counsel, asserting that his trial counsel failed to prepare and submit another ATR, and failed to call as witnesses Vlach's psychologist and his group therapist. However, the scope of our review on certiorari is strictly limited, as set forth above, and a claim of ineffective assistance of counsel is not within that scope. *See **State v. Ramey***, 121 Wis. 2d 177, 181-82, 359 N.W.2d 402 (Ct. App. 1984). As a result, we cannot consider that claim. *See **id.***

¶32 Therefore, because we conclude that DHA's decision was based on substantial evidence as set forth in the record to which it applied the proper legal standard, it properly exercised its discretion in revoking Vlach's probation. *See **Von Arx***, 185 Wis. 2d at 656. As such, the decision was not arbitrary and capricious. *See **id.*** Accordingly, we affirm the trial court's order to uphold DHA's decision.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11