EDWARDS, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–148–CR. Submitted on briefs September 14, 1976.—Decided October 19, 1976.*
(Also reported in 246 N. W. 2d 109.)

For the plaintiff in error the cause was submitted on the brief of *Patrick J. Devitt*, Legal Aid Society of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

BEILFUSS, C. J.   The primary issues are whether the conditions of probation imposed upon plaintiff in error were erroneous, and whether it was an abuse of discretion to impose the condition or deny a motion for modification of those conditions.

The plaintiff in error, Karen Edwards (hereinafter defendant), after plea negotiations, on September 11, 1973 plead guilty to three offenses: (1) Theft from the person; (2) operating a motor vehicle without the owner's consent; and (3) party to the crime of aiding an escape from custody. She was sentenced to indeterminate terms of three years at the Women's Home at Taycheedah. The execution of the sentences was stayed and she was placed on probation for a period of four years. The condition of probation to which she now objects was an order of the court that she not contact either of her co-defendants.

In separate proceedings her co-defendants were convicted and incarcerated.

On April 22, 1973, the defendant visited Kenneth and Steven Wilson at the Door County jail in Sturgeon Bay. She smuggled a hacksaw blade and pipe wrench into the jail to aid the Wilsons' escape. These items were used by the Wilsons in escaping from jail. On April 25, 1973, in Milwaukee county, the defendant and the Wilsons robbed Frederick W. Rushing, Jr., at knifepoint. The defendant and the Wilsons had been riding with Rushing in his car when Kenneth Wilson placed a knife at his throat and told him to pull over. After taking $15 from Rushing, Steven Wilson told him to get out of the car. The defendant then suggested that Rushing's wallet might contain other usable items. The wallet was taken and the defendant and the Wilsons drove off in Rushing's car. The initial contact with Rushing was made by the defendant.

The defendant filed a motion for modification of sentence, requesting that the court remove the condition that she have no contact or association with Steven Wilson. She stated she and Steven Wilson wanted to be married as soon as possible, and while he was incarcerated they wanted to communicate by mail and visit according to the rules of the state reformatory at Green Bay. The condition was modified so as to allow defendant to correspond with Steven Wilson, otherwise the motion was denied. Defendant seeks review of the sentence and denial of modification.

Sec. 973.09 (1), Stats., authorizes a court to impose "any conditions [of probation] which appear to be reasonable and appropriate." This court has previously adopted standard 3.2 of the American Bar Association *Standards Relating to Probation* (Approved Draft, 1970). *State v. Garner* (1972), 54 Wis. 2d 100, 106, 194 N.W. 2d 649. This standard, relating to the nature and conditions of probation, provides in part:

"(c) Conditions may appropriately deal with matters such as the folllowing:
". . .

"(vii) refraining from consorting with certain types of people or frequenting certain types of places."[1]

The question then is whether it was reasonable and appropriate for the trial judge to impose the condition of probation that the defendant refrain from consorting with her co-defendants. *Garner, supra,* at p. 106, noted

[1] In its entirety, 3.2 reads as follows:

"3.2 *Nature and determination of conditions.*

"(a) It should be a condition of every sentence to probation that the probationer lead a law-abiding life during the period of his probation. No other conditions should be required by statute; but the sentencing court should be authorized to prescribe additional conditions to fit the circumstances of each case. Development of standard conditions as a guide to sentencing courts is appropriate so long as such conditions are not routinely imposed.

"(b) Conditions imposed by the court should be designed to assist the probationer in leading a law-abiding life. They should be reasonably related to his rehabilitation and not unduly restrictive of his liberty or incompatible with his freedom of religion. They should not be so vague or ambiguous as to give no real guidance.

"(c) Conditions may appropriately deal with matters such as the following:

"(i) cooperating with a program of supervision;

"(ii) meeting family responsibilities;

"(iii) maintaining steady employment or engaging or refraining from engaging in a specific employment or occupation;

"(iv) pursuing prescribed educational or vocational training;

"(v) undergoing available medical or psychiatric treatment;

"(vi) maintaining residence in a prescribed area or in a special facility established for or available to persons on probation;

"(vii) refraining from consorting with certain types of people or frequenting certain types of places;

"(viii) making restitution of the fruits of the crime or reparation for loss or damage caused thereby.

"(d) Conditions requiring payment of fines, restitution, reparation, or family support should not go beyond the probationer's ability to pay.

"(e) The performance bond now authorized in some jurisdictions should not be employed as a condition of probation.

"(f) Probationers should not be required to pay the costs of probation."

that probation conditions must meet the needs of the particular case.

The judge was aware that the defendant never had any criminal involvement prior to these offenses, nor had she been involved with juvenile authorities. He also found the aiding escape crime particularly serious. Her only criminal activity centered around her involvement with the Wilsons. It was his apparent belief that she would be less likely to commit further crimes if she had no contact with them. While the temptation to violate the condition may be great, under the circumstances of her crime it was reasonable. Probation is not a matter of right, rather it is a privilege.[2] It is granted with the goals of rehabilitation and protection of society in mind. The obvious goal of the trial judge was that the defendant avoid further criminal activity. He applied a condition which accorded with the ABA probation standard that a probationer refrain from consorting with certain people. In this case the persons were specifically those who had been involved with the probationer in criminal activity. The condition was designed for her rehabilitation and the protection of society. It was reasonable and appropriate. In imposing it the trial judge did not abuse his discretion.

Additionally, sec. 973.09 (3), Stats., provides that prior to expiration of the probation period "the court may for cause . . . modify the terms and conditions" of probation. This section conforms with standard 3.3 of the ABA probation standards. In the commentary to this standard it is stated "that conditions once fixed should not become frozen into an irrevocable pattern. . . ."[3] The defendant is not precluded from applying again to

[2] *State v. Gerard* (1973), 57 Wis. 2d 611, 619, 205 N. W. 2d 374, appeal dismissed, 414 U.S. 804, 94 Sup. Ct. 148, 38 L. Ed. 2d 40.

[3] American Bar Association *Standards Relating to Probation, supra,* p. 51.

the sentencing court for modification of the conditions. If adjustment has been satisfactory, if she has matured emotionally and demonstrated a greater respect for the rights of others, the judge may modify the condition.

■ The defendant argues that since sec. 245.02, Stats., provides that every male and female person having reached a certain age shall be capable of contracting marriage if otherwise competent, the trial judge has usurped the legislative role by imposing a condition which prevents the defendant from having contact with and, therefore marrying Steven Wilson. The legislature has specifically stated that a sentencing judge has the power to impose reasonable conditions of probation. The standard on conditions of probation which this court adopted in *Garner, supra,* states that conditions should be related to the probationer's rehabilitation and not unduly restrictive of his liberty. American Bar Association *Standards Relating to Probation,* sec. 3.2 (b), p. 44 (Approved Draft, 1970). This standard anticipates restrictions on liberty; it anticipates treatment that differs from that of the general public. This condition, while restrictive, was not unduly so. It was integrally related to her rehabilitation. It did not usurp the legislature's power, but rather was within the purview of powers given the sentencing judge by the legislature.

■ The defendant asserts that the condition of probation which prevents her from having any contacts with Steven and Kenneth Wilson violates her First, Ninth and Fourteenth Amendment rights. There are constitutional limitations on conditions of probation. *State v. Garner, supra.*[4] However, conditions of probation may

---

[4] The following cases were cited in *Garner* as those recognizing constitutional limitations on conditions of probation: *In re Allen* (1969), 71 Cal. 2d 388, 455 Pac. 2d 143, 78 Cal. Rptr. 207 (condition that indigent reimburse state for cost of appointed counsel discourages right to counsel) ; *In re Antazo* (1970), 3 Cal. 3d 100, 473 Pac. 2d 999, 89 Cal. Rptr. 255 (condition that ad-

impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation.[5]

In *Mannino, supra,* the probationer had been convicted of an assault which took place when he was involved in a campus demonstration. Essentially the conditions of probation put a "gag" on the probationer and prevented him from participating in any political activity. The court invalidated portions of the conditions as being overbroad and unrelated to his criminal conduct. It upheld a condition which prohibited his active participation in protests or demonstrations. This condition was upheld because it could be rationally inferred from the probationer's past conduct that active participation in demonstrations might lead to violent crime. It was the response he had received while speaking at a demonstration which led to his assaulting an onlooker. Likewise, the condition which prohibits contact with Steven or Kenneth Wilson may be upheld because it can be rationally inferred from the probationer's past conduct that contact with them might lead to future crime. Prohibiting her from associating with them was intended to prevent further crime. The condition was reasonably related to her rehabilitation and it was not overbroad. The constitutional infringement was therefore permissible and proper.

We conclude that the probation condition imposed upon the defendant was not legally erroneous, nor was its

mittedly indigent defendant pay fine and penalty assessment invalid as denial of equal protection); *Inman v. State* (1971), 124 Ga. App. 190, 183 S. E. 2d 413 (condition that defendant get short haircut violative of rights of self-expression and personal freedom); *People v. Arvanites* (1971), 17 Cal. App. 3d 1052, 95 Cal. Rptr. 493, and *In re Mannino* (1971), 14 Cal. App. 3d 953, 92 Cal. Rptr. 880 (sweeping restrictions on first amendment activity held invalid conditions).

[5] *In re Mannino* (1971), 14 Cal. App. 3d 953, 968, 92 Cal. Rptr. 880; Annot. 45 A. L. R. 3d 1022.

imposition an abuse of discretion. Further, the subsequent modification was not an abuse of discretion.

*By the Court.*—Order affirmed.

ABRAHAMSON, J. *(dissenting).* What is reasonable depends on the circumstances. An appellate court should not second guess the trial court on what rehabilitation measures are needed for the probationer. Nevertheless, this court must be zealous in assuring that the condition is reasonably related to reformation and rehabilitation and is not overly broad, especially where a constitutionally protected right may be involved. The condition preventing Karen Edwards from having any contacts with Steven and Kenneth Wilson, except for mail communication, extends for the whole period of probation. A less restrictive condition regulating the probationer's contact with the Wilsons can be devised to accomplish what the majority opinion states are the goals of the condition— the probationer's rehabilitation and the protection of society. There is reason to believe that freedom of association promotes rehabilitation by enabling a probationer to establish and maintain normal relationships. For these reasons I believe that the probation condition imposed upon the defendant is overly broad.