James F. VON ARX, Petitioner-Appellant,†

v.

David H. SCHWARZ, Division Administrator,
Respondent-Respondent.

Court of Appeals

*No. 93–2724. Submitted on briefs April 25, 1994.—Decided
May 24, 1994.*

(Also reported in 517 N.W.2d 540.)

†Petition to review denied.

646

648

For the petitioner-appellant the cause was submitted on the briefs of *Roger Merry* of *Merry Law Offices, S.C.* of Monroe.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *Paul Lundsten*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. James Von Arx appeals an order revoking his probation and imposing an eight-year sentence with credit for time served, based on the Division of Hearings and Appeals' determination that he failed to meet the counseling and sex offender treatment conditions of his probation. Von Arx contends that his probation revocation must be reversed because (1) the revocation resulted from the State's failure to reasonably accommodate his religious beliefs by enrolling him in treatment programs that do not offend his religious principles; (2) the revocation was based on his refusal to participate in treatment programs that he claims violate his religious principles, which he argues is an abridgement of his right to religious freedom guaranteed by the first amendment to the United States Constitution; and (3) the revocation decision is not supported by the evidence. We conclude that the State attempted to reasonably accommodate Von Arx's religious beliefs and that those attempts were thwarted by Von Arx himself. We further conclude that requiring Von Arx to complete sex offender treatment programs

that violate some of Von Arx's religious beliefs is not an overly broad infringement of Von Arx's right to religious freedom, is reasonably related to Von Arx's rehabilitation and is reasonably related to the legitimate State goal of protecting society from the dangers posed by an unrehabilitated felon. Finally, we conclude that substantial evidence supports the division's determination that revocation was appropriate. We therefore affirm the order.

## FACTS

In November 1987, Von Arx was convicted of one count of first-degree sexual assault of a child. Although Von Arx was convicted of a single count of sexual assault, his treatment record discloses his admission to sexually assaulting five female children, four of whom were under the age of ten. As a result of his conviction, Von Arx was sentenced to eight years in prison. The sentence was stayed and he was placed on probation subject to various conditions, including participation in sex offender treatment.

In March 1991, Von Arx enrolled in a treatment program administered by Dr. Robert Gordon of Applied Mental Health Associates. In June 1991, Von Arx insisted that because of his religious beliefs, he was no longer having sexual deviant fantasies about children and that he no longer needed treatment. Gordon then conducted a penile plethysmography test, which measured Von Arx's sexual response to pictures of nude males and females ranging in age from four to adult and to audiotape vignettes describing consenting sexual contact with adult females and forceful and nonforceful sexual contact with female children. The test results indicated that Von Arx was most sexually aroused by pictures of nude four-year-old girls followed

by girls between the ages of eight and twelve and by vignettes describing nonforceful sexual contact with female children. Based on these results, Gordon reported that it was likely that Von Arx was in fact still having sexual fantasies involving children.

Following the plethysmography test, Gordon warned Von Arx that he would be terminated from the program unless he participated fully and "broke through" his denial patterns. Von Arx, however, stated that he was not in need of treatment because his sexual attraction to children was no longer a problem for him because of his religious faith. There is no evidence that Gordon's program required masturbation. Gordon subsequently terminated Von Arx's participation in group counseling based on his continued denial of inappropriate sexual arousal and his lack of understanding of how his behavior impacted his victims. Gordon opined that because of this noncooperation, Von Arx's participation in the group was nonproductive and that further participation could interfere with other group members' progress.

Following his termination from Gordon's treatment program, Von Arx was offered treatment by the United Church Family Services through the Sunburst Group. Sunburst did not involve behavioral techniques and, contrary to Von Arx's assertion, did not require masturbation as part of its treatment program. During the first several months of his participation in Sunburst, the group therapist warned Von Arx several times that his participation was unsatisfactory due to his continued denial of his deviances, his failure to honestly discuss his activities outside of the group and general failure to fully participate in discussions. The group therapist recommended that Von Arx submit to individual therapy with a therapist of his choice.

651

Because Von Arx failed to select a therapist, he was assigned to a therapist affiliated with Sunburst. Von Arx refused to submit to individual counseling, stating that because of his religious conversion he no longer needed treatment. After a total of approximately six months' participation in Sunburst, Von Arx was terminated because of his continued unsatisfactory participation. One of the Sunburst therapists reported his belief that Von Arx "is at very high risk of re-offending given his abusive history and his current denial patterns."

Von Arx then agreed to submit to an evaluation by Steve McGovern, the program director for a sex offender program in Attic Correctional Services, to determine whether Von Arx was a suitable candidate for the program. At the screening, McGovern informed Von Arx that the Attic program involved eight units, each of which McGovern termed essential to the completed program. Two of the units involved behavioral techniques, called covert sensitization and masturbatory satiation. Covert sensitization involves offenders thinking about a deviant sex act and then the real-life consequences of their deviant acts, for example getting arrested, prosecuted and convicted, and the impact those consequences have on them and their families. Masturbatory satiation involves having offenders continue listening to a tape-recorded vignette describing their deviant acts after they have climaxed to those tapes, in an attempt to render offenders less aroused by deviant stimuli. The goals of these techniques are to alter an offender's thinking patterns concerning inappropriate sexual relations so that offenders recognize those relations as inappropriate and to alleviate the offender's urges to engage in deviant sexual behavior.

When McGovern explained these techniques to Von Arx, Von Arx stated his refusal to participate in the masturbatory satiation or covert sensitization units because masturbation, examining nude pictures and thinking about deviant sexual conduct violated his religious principles. McGovern explained to Von Arx that these units were essential to Attic's treatment program and that Von Arx would be found unsuitable for the program if he refused to participate in all of the treatment units. Von Arx refused to participate in the Attic program. McGovern believed that some sort of behavioral technique was necessary to Von Arx's effective treatment. Based on his meeting with Von Arx and his review of Von Arx's treatment records, McGovern opined that Von Arx was unwilling to undergo treatment that would lessen his risk of re-offending and that his likelihood of re-offending posed a very high danger to the community.

In August 1992, after a warning that he would be placed on probation hold if he refused to participate in the Attic program, revocation proceedings were initiated. At the revocation hearing, Von Arx's probation agent testified that Von Arx had admitted to her in April and June 1992 that he continued to masturbate because "he was weak and he was doing what he felt he had to do in order to not reoffend." She further testified that while Von Arx told her he was trying to find a suitable Christian counselor, he never proposed a suitable counselor. Contrary to Von Arx's testimony, his probation agent stated that Von Arx never told her he was on a waiting list for a Christian treatment program that would not offend his religious principles. Finally, the probation agent testified that Von Arx had been sent to Sunburst in an attempt to accommodate

his desire to enter a Christian treatment program, but that he had refused to participate.

Von Arx's Baptist minister, Pastor Daniel Stertz, testified that while the Baptist Church does not take a formal position on masturbation, there were Biblical passages upon which a person could base a genuine belief that the Bible prohibits masturbation. Stertz also explained that deviant sexual fantasies were as sinful as the deviant sex acts themselves, confirming Von Arx's statement that treatments involving deviant sexual thoughts would violate Baptist religious principles. Stertz indicated that a Biblical counselor in Illinois directed a program called "nethetic" counseling that would not violate Baptist religious principles. Stertz explained that nethetic counseling involves confronting people with their problems, demonstrating that their conduct is wrong and showing them how to replace their conduct with proper conduct. Stertz, however, did not know whether this counseling was accepted in the scientific community. Nor did Stertz refer Von Arx to this or any other counseling program when Von Arx told Stertz of his problems.

Von Arx also offered into evidence a letter from Richard Hadfield, which described various forms of behavioral techniques for treating sex offenders. Almost all of the techniques involved either masturbation, fantasizing about sexual conduct or viewing sexually explicit materials. McGovern indicated that it was questionable whether the types of treatment that did not involve masturbation, fantasizing or visual stimuli could effectively alter an offender's arousal patterns.

Following the hearing, the administrative law judge found that Von Arx was in continued need of therapy, represented a significant danger to the com-

munity because he was likely to engage in deviant sexual conduct with children and that his religious beliefs were inadequate to assure that he would not re-offend. Because of Von Arx's continued refusal to submit to treatment for his "serious sexual dysfunction," the ALJ found him in violation of his probation conditions. The ALJ thus revoked Von Arx's probation. Von Arx appealed the revocation to the division of hearings and appeals, which affirmed the ALJ's decision. Von Arx appealed the division's determination to the trial court, which affirmed the revocation.

## STANDARD OF REVIEW

When reviewing probation revocation determinations, we defer to the division's determinations. *Van Ermen v. DHSS*, 84 Wis. 2d 57, 63, 267 N.W.2d 17, 20 (1978). The scope of review is limited to the following questions: (1) whether the division kept within its jurisdiction; (2) whether the division acted according to law; (3) whether the division's actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the division might reasonably make the order or determination in question. *Id.*

At the revocation hearing the State has the burden of proving the alleged probation violation by a preponderance of the evidence. *State ex rel. Thompson v. Riveland*, 109 Wis. 2d 580, 585, 326 N.W.2d 768, 771 (1982). On appeal challenging a revocation decision, however, the probationer bears the burden of proving that the decision was arbitrary and capricious. *State ex rel. Solie v. Schmidt*, 73 Wis. 2d 76, 79, 242 N.W.2d 244, 246 (1976).

An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion. *Van Ermen*, 84 Wis. 2d at 65, 267 N.W.2d at 20-21. A proper exercise of discretion contemplates a reasoning process based on the facts of record "and a conclusion based on a logical rationale founded upon proper legal standards." *Id.* at 65, 267 N.W.2d at 21 (citation omitted). In the exercise of its discretion the division should consider alternatives that are available and feasible. *Id.* at 67, 267 N.W.2d at 21-22. We may not substitute our judgment for that of the division; we inquire only whether substantial evidence supports the division's decision. *Id.* at 64, 267 N.W.2d at 20. If substantial evidence supports the division's determination, it must be affirmed even though the evidence may support a contrary determination. "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." *Cornwell Personnel Assocs. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705, 707 (Ct. App. 1993).

## REASONABLE ACCOMMODATION OF RELIGIOUS BELIEFS

Von Arx first contends that the division failed to adequately accommodate his religious beliefs by enrolling him in a treatment program for sex offenders that did not violate his religious principles. For the purpose of addressing this argument, we will assume the requirement that the division consider feasible alternatives involves the obligation to reasonably accommodate a probationer's religious beliefs. *See Van Ermen*, 84 Wis. 2d at 67, 267 N.W.2d at 21-22.

Here, Von Arx refused to satisfactorily participate in three separate treatment programs offered to him by his probation agent. In each case he denied that he needed treatment and maintained that his religious beliefs were sufficient to prevent him from re-offending. Von Arx also refused to fully participate in all of the treatment programs, even though one of the programs, operated by a Christian organization, did not involve masturbation or other therapeutic techniques that Von Arx claimed violated his religious principles. Von Arx failed to select a suitable individual therapist when given permission to do so. Even upon his termination from the third program, his probation agent indicated a willingness to consider a fourth therapy program if Von Arx could suggest one he found suitable. Other than a rather vague reference to being on a waiting list for a program in Madison, Von Arx identified no treatment program or counselor and provided no time frame for when treatment would be available. While Pastor Stertz alluded to a suitable program available in Illinois, neither the validity and effectiveness of the therapy nor Von Arx's suitability for such treatment were discussed. Thus, Von Arx, when presented with the opportunity, could offer no viable, scientifically approved alternative treatment that would not violate his religious principles and in which he would fully participate so that the probation condition requiring continued treatment could be fulfilled.

In light of these facts, we conclude that the State made every reasonable effort to accommodate Von Arx's religious views and to find a suitable sex offender treatment program that would not offend his religious beliefs. The fact that the State was unable to do so stems more from Von Arx's refusal to cooperate and

657

participate in any of the alternatives made available to him, coupled with his failure to identify a program that he found suitable, than from the inadequacy of the State's attempts to accommodate Von Arx's religious beliefs. We therefore conclude that the State's attempts to accommodate Von Arx's religious beliefs were reasonable and adequate.

## RELIGIOUS FREEDOM v. REHABILITATION

Von Arx next contends that because his probation revocation was based on his refusal to complete sex offender treatment that offended his religious beliefs, the revocation violated his constitutional right to religious freedom. There is little question that religious freedom is one of the most precious liberties guaranteed by the first amendment. *State v. Yoder*, 49 Wis. 2d 430, 434, 182 N.W.2d 539, 540 (1971), *affirmed, Wisconsin v. Yoder*, 406 U.S. 205 (1972). Such rights are not absolute, however, and a convicted felon does not enjoy the same degree of freedom of constitutional guarantees as does the citizenry. *See State v. Miller*, 175 Wis. 2d 204, 210, 499 N.W.2d 215, 217 (Ct. App. 1993). Because a convicted felon, even on probation, is in the State's custody, probation conditions "may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation." *Edwards v. State*, 74 Wis. 2d 79, 84-85, 246 N.W.2d 109, 111 (1976).

In *Edwards*, our supreme court upheld as constitutionally permissible a probation condition preventing the probationer from having contact with certain persons with whom she had previously engaged in criminal activity. *Id.* at 85, 246 N.W.2d at 112. The court reasoned that the infringement on the proba-

tioner's constitutional right to freedom of association was not overly broad and was reasonably related to the rehabilitative goal of preventing further crime. *Id.* Similarly, in *Miller*, we upheld as constitutionally permissible a probation condition prohibiting the probationer from telephoning any unrelated women without his probation officer's permission. *Id.* at 211, 499 N.W.2d at 218. We held that the infringement of the probationer's constitutional right to freedom of speech was not overly broad and was reasonably related to the probationer's need to be rehabilitated from his past criminal conduct of making sexually explicit telephone calls to women. *Id.* at 210-11, 499 N.W.2d at 217-18.

In determining whether the State's infringement upon a probationer's constitutional rights is permissible, we must determine the reasonableness of the State's action under the facts of each case. Here, one condition of Von Arx's probation is that he submit to sex offender treatment. Von Arx does not claim that this condition, on its face, violates any of his constitutional rights. Rather, Von Arx states that the treatment techniques utilized by some of the treatment programs the State offered offend two aspects of his religious principles—that masturbating and thinking about or viewing sexually explicit materials are sinful. We do not question the sincerity of Von Arx's religious beliefs or the validity of Von Arx's assertions that these treatment techniques violate those beliefs. We determine only whether the probation condition requiring Von Arx to participate in these treatment programs was overly broad and whether it was related to Von Arx's rehabilitation.

The overwhelming evidence demonstrates that Von Arx posed a significant danger to children in the community because of his likelihood to engage in deviant sexual behavior with children if he remained untreated. Additionally, not all of the treatment programs the State offered to Von Arx involved those treatment techniques that violate Von Arx's religious beliefs. Indeed, the State provided him with at least two opportunities to propose a therapist or treatment program that did not violate his religious principles. 

Moreover, the sex offender treatment programs are directly related to Von Arx's need to be rehabilitated from his past criminal conduct of engaging in deviant sex acts with children, as well as the rehabilitative goal of preventing Von Arx from re-offending. Von Arx does not challenge the scientific validity, the therapeutic value, the appropriateness or the necessity of utilizing covert sensitization and masturbatory satiation to treat sexual offenders such as himself.[1] These facts, coupled with Von Arx's failure to propose a suitable treatment program that did not violate his religious principles when given the opportunity to do so, render the State's requirement that he participate in sex offender counseling reasonable, notwithstanding the intrusion upon Von Arx's religious freedom. We conclude that the probation condition was not overly broad and it was directly related to Von Arx's rehabilitation. Thus, the division's decision to revoke Von Arx's proba-

---

[1] We note that the sole challenge against the revocation was based upon Von Arx's first amendment right to religious freedom. Because this is the sole issue raised, we have not considered and do not address any other potential challenge against these treatment techniques.

tion based on his failure to comply with this condition was constitutionally permissible.

## SUBSTANTIAL EVIDENCE

Finally, Von Arx contends that the division's decision to revoke his probation is not supported by substantial evidence. Our supreme court has stated that the "ultimate question" posed in a revocation proceeding is whether the defendant "remains a 'good risk' susceptible to rehabilitation outside the prison or whether incarceration is necessary." *Van Ermen*, 84 Wis. 2d at 67, 267 N.W.2d at 21 (citation omitted). The uncontroverted evidence establishes that Von Arx failed to participate in the required sex offender treatment. Von Arx offered no evidence disputing plethysmography test results indicating that Von Arx was most sexually aroused by pictures of nude four-year old girls followed by girls between the ages of eight and twelve and by vignettes describing nonforceful sexual contact with female children. Evaluations finding Von Arx to present a continuing threat of re-offending remain uncontradicted. The fact that Von Arx has not yet re-offended is irrelevant to this determination. Because substantial evidence supports the division's determination that incarceration is necessary because without treatment Von Arx is likely to re-offend and thus poses a danger to society, we must uphold that determination. *Id.* at 64, 267 N.W.2d at 20.

*By the Court.*—Order affirmed.