COURT OF APPEALS
DECISION
DATED AND FILED

May 19, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1861**

Cir. Ct. No. 2018CV1867

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN EX REL. WILLIE MCSHAN,

PETITIONER-APPELLANT,

V.

BRIAN HAYES, ADMINISTRATOR, DIVISION OF HEARINGS AND

APPEALS,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Racine County: MICHAEL J. PIONTEK, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1      PER CURIAM.   Willie McShan appeals pro se from a circuit court order affirming his parole revocation.   McShan argues that the administrative law judge (ALJ)[1] erred on both procedural and substantive grounds in allowing into evidence a videotaped interview with N.F., a fourteen-year-old girl, alleging that McShan sexually assaulted her.   McShan further argues that substantial evidence did not support the ALJ's decision.   We hold that the ALJ properly admitted the videotaped statement and that the evidence supports the conclusion that McShan violated his rules of supervision.   Accordingly, we affirm.

## BACKGROUND

¶2      In 2011, McShan was released to supervision as a mandatory release parolee after serving a lengthy prison term for several felonies.   In 2018, his Department of Corrections (DOC) agent recommended parole revocation, based on allegations of sexual assault reported to the Milwaukee Police Department.   N.F., the purported victim, told police that McShan, her former boyfriend's grandfather, forced her to have sexual intercourse with him.   The Division of Hearings and Appeals (the Division) held a revocation hearing to determine whether McShan violated the conditions of his parole[2] and whether revocation was appropriate.

¶3      Before the hearing, the DOC provided McShan, then represented by counsel, with a witness list that included N.F.  The DOC also informed McShan that it would be offering videotape evidence of a forensic interview of N.F., conducted by Lynn Cook of the Milwaukee Child Advocacy Center.  Sometime prior to the hearing (it is unclear when), McShan learned that N.F. would not be appearing and

_____

[1]  ALJ Christine L. Hansen presided.

[2]  The rules at issue required that McShan not violate any laws or have unapproved contact with minors.

that the DOC was seeking to offer the videotape in lieu of her testimony. McShan objected, arguing that the statement was inadmissible hearsay. The ALJ acknowledged that several hearsay exceptions might apply but withheld its ruling on admissibility until after Cook's testimony, so that it could "get some more facts" about the interview.

¶4     At the revocation hearing, Cook testified about her background and credentials. She explained how she structured the interview so as to promote truthful and accurate answers; for example, she did "narrative event practice [with N.F.], which is an episodic memory test that increases accuracy in information throughout the rest of the interview." She then summarized the substance of her interview with N.F. On examination by the ALJ, Cook testified that she had no prior relationship with N.F. and no motivation to encourage N.F. to lie, that N.F. took an oath to tell the truth and agreed on the importance of telling the truth, and that she did not observe "sign[s] of deceit" in N.F. McShan did not testify but presented several witnesses; his DOC agent also testified.

¶5     At the close of testimony, the ALJ stated that it would review the video and make specific findings in its written decision, but that it was "preliminarily" entering the video into evidence. The ALJ found "good cause" for not allowing confrontation of N.F., based on the likelihood that the video would be admissible under the residual hearsay exception. *See **Morrissey v. Brewer***, 408 U.S. 471, 481-82, 489 (1972) (parolees have a Fourteenth Amendment due process "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)"); ***State ex rel. Simpson v. Schwarz***, 2002 WI App 7, ¶22, 250 Wis. 2d 214, 640 N.W.2d 527 (2001) ("good cause" always exists where the evidence would be admissible under the

Wisconsin Rules of Evidence); WIS. STAT. § 908.03(24) (2017-18)[3] (residual hearsay exception that does not depend on the declarant's availability to testify, under which statements not specifically covered by another hearsay exception "but having comparable circumstantial guarantees of trustworthiness" are not excluded by the hearsay rule).

¶6     In its written decision, the ALJ ruled that, as anticipated, the videotape was admissible under WIS. STAT. § 908.03(24), the residual hearsay exception. Specifically, the ALJ determined that N.F.'s statement was sufficiently trustworthy under the five-part inquiry of *State v. Sorenson*, 143 Wis. 2d 226, 245-46, 421 N.W.2d 77 (1988), pursuant to which a child's statement about a sexual assault may be admitted under the residual hearsay exception.  Considering this videotape evidence together with the witness testimony and exhibits, the ALJ found, by a preponderance of the evidence, that McShan violated the specified conditions of parole.  *See* WIS. ADMIN. CODE § HA 2.05(6)(f).  The ALJ then determined that revocation was appropriate "to protect the public from further criminal activity and prevent the undue depreciation of the seriousness of the violations."  The ALJ ordered good time forfeiture totaling almost thirteen years on two parole terms[4] and two years' reincarceration on a third parole term.

¶7     McShan appealed to the Division, which sustained the ALJ's decision and order.  The Division agreed that the residual hearsay exception permitted the introduction of N.F.'s video interview, that a preponderance of the evidence

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version.

[4] The ALJ ordered twelve years, six months, and seven days of good time forfeited on one aggregated felony case, with the ability to earn good time.  The ALJ ordered five months and twenty-two days of good time forfeited on another felony case, without the ability to earn good time.

demonstrated that McShan sexually assaulted N.F., and that revocation and confinement were appropriate. McShan sought certiorari review in the circuit court, which affirmed the Division's decision, and this appeal followed. We will discuss additional facts in the next section where relevant to our analysis.

## DISCUSSION

¶8      Our scope of review in certiorari proceedings is identical to, and independent of, that of the circuit court and is limited to whether the agency (here, the Division): (1) kept within it jurisdiction; (2) acted according to the law; (3) acted arbitrarily, capriciously, oppressively, or in bad faith; and (4) might reasonably have made the determination in question, given the evidence before it. *See State ex rel. Ortega v. McCaughtry*, 221 Wis. 2d 376, 385-86, 585 N.W.2d 640 (Ct. App. 1998); *Van Ermen v. DHHS*, 84 Wis. 2d 57, 63, 267 N.W.2d 17 (1978).

¶9      We construe McShan's arguments on appeal as follows: (1) the ALJ[5] acted contrary to the law in various respects, thereby denying McShan a proper hearing; (2) the ALJ acted arbitrarily and capriciously in determining that the videotape was admissible under WIS. STAT. § 908.03(24), the residual hearsay exception; and (3) substantial evidence did not support the ALJ's revocation decision.[6] We address each argument in order.

---

[5] To be precise, our review is of the Division's decision, but this decision sustains and on all points agrees with the ALJ's decision and order revoking parole. Therefore, for convenience, we treat the Division and the ALJ as a single entity and review the ALJ's determinations as if they were the Division's.

[6] Arguments (2) and (3) concern the substance of the videotape interview of N.F. A copy of this interview is not part of the appellate record. Although McShan disagrees about the import of N.F.'s statement, however, he does not contend that the ALJ and the Division inaccurately described or summarized N.F.'s interview with Cook. Therefore, we rely on the ALJ's and Division's written descriptions in lieu of viewing the video itself.

*The ALJ Acted According to the Law*

¶10     McShan raises several interrelated procedural arguments as to why the ALJ erred in admitting N.F.'s videotaped statement.  He first contends that the ALJ did not make a specific finding of good cause for not allowing confrontation of N.F., thereby violating his Sixth Amendment right to confrontation and Fourteenth Amendment right to due process.  At the outset, we note that because revocations are civil proceedings, parolees and others on supervision are not entitled to "the full panoply of rights due a defendant in [a criminal proceeding.]" *Morrissey*, 408 U.S. at 480.  Consequently, parolees have no Sixth Amendment right to confrontation. *Simpson*, 250 Wis. 2d 214, ¶12 & n.2.[7]  McShan is correct, however, in that he is entitled to certain "minimum requirements of due process" under the Fourteenth Amendment, including "the right to confront and cross-examine adverse witnesses (unless the hearing examiner specifically finds good cause for not allowing confrontation)." *See id.*, ¶12 (quoting *Morrissey*, 408 U.S. at 489).

¶11     Nonetheless, McShan is incorrect in asserting that the ALJ did not make a specific good cause finding in this case.  "Good cause" always exists where the statement would be admissible under the Wisconsin Rules of Evidence. *Simpson*, 250 Wis. 2d 214, ¶22.  The ALJ made a preliminary finding that N.F.'s statement was likely admissible under the residual hearsay exception, WIS. STAT. § 908.03(24).  This finding was based on Cook's qualifications and experience conducting these interviews and on N.F.'s appreciation of the need to tell the truth.  After the hearing, the ALJ watched the video and issued a detailed written decision, which analyzed the trustworthiness of N.F.'s statement and concluded that the

---

[7] For that reason, we need not inquire as to whether N.F.'s statements are testimonial so as to require a right of confrontation and cross-examination pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004).

residual hearsay exception did, in fact, allow for its admission. McShan does not cite to, and we are unaware of, any law stating that an ALJ must make final decisions on the admissibility of evidence during the hearing itself. Consequently, McShan received the due process protections to which he was entitled in this regard.

¶12 McShan next contends that he was "blindsided" and unable to mount a defense because of the combined actions of the DOC and the ALJ. According to McShan, he relied on the DOC's witness list and expected N.F. at the hearing; had he realized that N.F. would not be testifying, he would have called additional witnesses and/or N.F. herself. McShan further argues that, by ruling on the videotape's admissibility after the close of testimony, the ALJ left him with "zero opportunity to defend against its statement." Essentially, McShan contends that, by the time he learned that the videotape would replace N.F.'s testimony, it was too late to effectively defend against those statements.

¶13 After careful review of the record, we find no evidence that McShan was "blindsided" or precluded from mounting a full defense. It is true that the witness list provided to McShan stated that N.F. would testify at the hearing. At some point *prior* to the hearing, however, McShan learned that N.F. would not be called to testify.[8] It is also clear that McShan received and had watched the video

---

[8] The April 19, 2018 hearing notice attached a list of witnesses, including N.F. The hearing was held on June 26, 2018. Before the first witness was called, the ALJ went through the proposed exhibits and asked McShan if he acknowledged receipt of the videotape interview of N.F. McShan responded, "We acknowledge receipt; however, that video in itself is not reliable hearsay. *Apparently, the [DOC] does not intend to have the alleged victim testify.*" (Emphasis added.) Thus, although it is unclear when McShan learned that the DOC did not intend to call N.F., he was indisputably aware of this fact before the start of the hearing.

prior to the hearing.[9]  Then, before the hearing began, McShan objected to admitting the videotape but did *not* state that he wished to call additional witnesses if it were admitted.  McShan did not, in other words, suggest that he was "blindsided" at the time this evidence was admitted, nor did he seek to call N.F. to testify, pursuant to WIS. STAT. § 908.08(5)(a).[10]  McShan, furthermore, did not object to the ALJ's decision to delay its hearsay ruling or otherwise indicate that he sought an immediate ruling on admissibility so as to best present his own defense.

¶14   In short, McShan has forfeited any right to challenge a hearing procedure that he did not object to, or to argue that he would have offered additional witnesses or evidence where he did not, in fact, seek to do so at the time.  *See DOJ v. DWD*, 2015 WI App 22, ¶18, 361 Wis. 2d 196, 861 N.W.2d 789.  A key principle underlying the forfeiture (or waiver) rule is that a party cannot be allowed to "sandbag" or strategically consent to some alleged error below and thereafter claim that the error is grounds for reversal on appeal.  *State v. Huebner*, 2000 WI 59, ¶¶11-12 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727.  Either inadvertently or as a strategic choice, once learning that N.F. would not testify, McShan chose not to call new witnesses or present other evidence (or seek to delay the hearing so as to do

---

[9] *See supra*, note 8.  In addition, on cross-examination of Cook, McShan asked leading questions based on the content of the video, which indicates that he had viewed the video.  Furthermore, McShan declined the ALJ's offer to play part of the video, stating, "The video speaks for itself; there's no reason to play it."  Presumably, he would not have done so had he not yet viewed the video.

[10] Before the hearing started, the ALJ stated that it wanted to first hear Cook's testimony but that the videotape was likely admissible under either WIS. STAT. § 908.08 (audiovisual recordings of statements of children who are available to testify) or WIS. STAT. § 908.03(24) (the residual hearsay exception for which the availability of the witness is immaterial).  These statutes differ in that the former allows for the hearing examiner to order the child produced for cross-examination upon request of the party not offering the child's statement into evidence.  *See* § 908.08(5)(a).  Following the close of testimony, the ALJ admitted the statement under § 908.03(24).  Prior to this determination, however, McShan could have requested that the ALJ produce N.F. on the assumption that § 908.08 might apply.

so), and he never explained to the ALJ why its proposed process for admitting the videotape hindered his defense. McShan cannot now claim error.

¶15 McShan next argues that the ALJ did not follow the procedure for admitting audiovisual recordings of statements of children under WIS. STAT. § 908.08(2), (3) (for example, the ALJ did not conduct a preliminary hearing on the statement's admissibility, *see* § 908.08(2)(b)). The ALJ, however, did not admit the videotape under § 908.08 but rather under WIS. STAT. § 908.03(24), the residual hearsay exception. Therefore, the ALJ was not required to follow § 908.08. *See State v. Snider*, 2003 WI App 172, ¶12, 266 Wis. 2d 830, 668 N.W.2d 784 ("[I]f a child's videotape statement is admissible under one of the hearsay exceptions set forth in [§] 908.03, the requirements … of § 908.08 are inapplicable."); *see also State v. Mercado*, 2021 WI 2, ¶66, 395 Wis. 2d 296, 953 N.W.2d 337. Likewise, and contrary to McShan's next assertion, the ALJ was not required to find that N.F. was unavailable to testify in order to admit her statement under § 908.03(24). *See Simpson*, 250 Wis. 2d 214, ¶¶20-22; *Sorenson*, 143 Wis. 2d at 242; § 908.03 ("The following [statements] are not excluded by the hearsay rule, even though the declarant is available as a witness ….").

¶16 In sum, McShan was afforded the due process protection to which he was entitled under the case law and administrative code. *See Morrissey*, 408 U.S. at 487-90; *Simpson*, 250 Wis. 2d 214, ¶12; WIS. ADMIN. CODE § HA 2.05(1), (3), (6). Although N.F. did not testify as initially expected, and although the ALJ did not immediately rule on the admissibility of N.F.'s recorded statement, McShan was not thereby precluded from presenting a complete defense.

*The ALJ's Decision to Admit the Videotape Under the Residual Hearsay Exception Was Not Arbitrary and Capricious*

¶17     We construe McShan to next argue that the ALJ acted arbitrarily and capriciously in applying the **Sorenson** factors and admitting the videotape under WIS. STAT. § 908.03(24), the residual hearsay exception.  An agency decision is not arbitrary and capricious where the agency properly exercised its discretion, meaning that it followed "a reasoning process based on the facts of record" and reached "a conclusion based on a logical rationale founded upon proper legal standards." **Von Arx v. Schwarz**, 185 Wis. 2d 645, 656, 517 N.W.2d 540 (Ct. App. 1994) (citation omitted); *see also* **Sorenson**, 143 Wis. 2d at 240 (review of evidentiary rulings is for an erroneous exercise of discretion).

¶18     Statements made outside of court and offered to prove the truth of the matter asserted are hearsay and subject to exclusion as hearsay, WIS. STAT. § 908.02, unless an exception applies.  WISCONSIN STAT. § 908.03 lists hearsay exceptions for which the availability of the declarant is immaterial; § 908.03(24) provides a catch-all "residual" hearsay exception for "[a] statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." *See* **Sorenson**, 143 Wis. 2d at 242-43.  In **Sorenson**, our supreme court held that, "[i]n the absence of a specific hearsay exception governing young children's statements in sexual assault cases, use of the residual [hearsay] exception is an appropriate method to admit these statements if they are otherwise proven sufficiently trustworthy." **Id.** at 243.  To assess admissibility under this exception, the court directed the trial court to "weigh the following factors, which need not be exclusive areas of inquiry":

> *First, the attributes of the child making the statement should be examined*, including age, ability to communicate verbally, to comprehend the statements or questions of others, to know the difference between truth and falsehood,

and any fear of punishment, retribution or other personal interest, such as close familial relationship with the defendant, expressed by the child which might affect the child's method of articulation or motivation to tell the truth.

*Second, the court should examine the person to whom the statement was made*, focusing on the person's relationship to the child, whether that relationship might have an impact upon the statement's trustworthiness, and any motivation of the recipient of the statement to fabricate or distort its contents.

*Third, the court should review the circumstances under which the statement was made*, including relation to the time of the alleged assault, the availability of a person in whom the child might confide, and other contextual factors which might enhance or detract from the statement's trustworthiness.

*Fourth, the content of the statement should be examined*, particularly noting any sign of deceit or falsity and whether the statement reveals a knowledge of matters not ordinarily attributable to a child of similar age.

*Finally, other corroborating evidence*, such as physical evidence of assault, statements made to others, and opportunity or motive of the defendant, *should be examined for consistency with the assertions made in the statement.*

The weight accorded to each factor may vary given the circumstances unique to each case. It is intended, however, that no single factor be dispositive of a statement's trustworthiness. Instead, the court must evaluate the force and totality of all these factors to determine if the statement possesses the requisite "circumstantial guarantees of trustworthiness" required by [the statute].

*Id.* at 245-46 (emphasis added).

¶19     The ALJ discussed each *Sorenson* factor in detail to determine the admissibility of N.F.'s recorded statement. Regarding the first factor, the attributes of the child, the ALJ noted that N.F. described the difference between truth and lie and demonstrated to Cook the importance of telling the truth and the consequences of lying. N.F. also took an oath to tell the truth. Moreover, "N.F. understood

11

Ms. Cook's questions and provided responsive and cogent answers." As to the second factor, the attributes of the interviewer, ALJ found Cook qualified and experienced and without any "known motivation to influence [N.F.]'s statement."

¶20    Third, as to the circumstances of the interview, the ALJ found that the "interview was conducted in accordance with state and national guidelines for forensic interviews, and in a generally non-leading fashion by a skilled forensic interviewer." Thus, "as the interview progressed … Ms. Cook succeeded in eliciting detailed accounts of the incidents based upon the child's recollection of the events." N.F. explained that she knew McShan through D.M., her boyfriend[11] and McShan's grandson. She then described in detail a sexual assault occurring when she was alone in McShan's house. According to N.F., McShan told her to come to his bedroom, forcibly performed oral sex on her, and forced her to have sexual intercourse with him.

¶21    Regarding the fourth factor, the content of the statement itself, the ALJ found that "N.F. appeared to be forthright and responded to the best of her ability and recollection." In fact, N.F. was worried that she would not be believed if she told Cook about a second incident, unreported to police, which took place in McShan's car. After Cook encouraged her to discuss the incident, N.F. stated that McShan forced her to perform oral sex on him in exchange for allowing her to borrow the car. N.F. stated that she felt she had no option but to perform the sex act: she was earning money by giving rides to people in McShan's car, and she needed the money to purchase hygiene items and clothes.

---

[11] It is unclear from the record whether D.M. was N.F.'s boyfriend or former boyfriend when the sexual assaults occurred. This point is irrelevant because N.F. continued to spend time in the house where McShan lived even after the couple stopped dating.

¶22    The ALJ took this opportunity to respond to McShan's arguments about N.F.'s trustworthiness and credibility.  The ALJ acknowledged that N.F. had refused to provide Cook with the login information to her social media account.  McShan argued that this indicated that N.F. was untruthful, but the ALJ disagreed, noting that N.F. had still provided "social media identifiers and names relevant to the investigation."   McShan further argued that N.F.'s untrustworthiness was demonstrated by "a plan reported by N.F.'s friends to steal Mr. McShan's car."  The ALJ pointed out, however, that N.F. "did not deny knowledge of the purported plan to steal Mr. McShan's car after the sexual assault."  (In its review of the ALJ decision, the Division also noted that N.F.'s "friends came up with the plan *after* they learned of the sexual abuse that McShan had committed" *because* they "were upset that McShan sexually assaulted her."  (Emphasis added.))  In addition, the ALJ found it immaterial that N.F. could not provide an exact date and time of each incident of sexual assault (N.F. merely stated that the assaults occurred around February 20, 2018).  In fact, N.F.'s not being able to answer certain statements "bolster[ed] her credibility in that she was following Ms. Cook's instruction … not [to] guess at an answer."  Finally, the ALJ found that "[t]he truthfulness of N.F.'s statement is further supported by the fact that during questioning about the sexual assaults themselves, there were times when N.F. appeared to become physically anxious and melancholy."

¶23    As to the fifth ***Sorenson*** factor, existence of corroborating evidence, the ALJ noted that this was N.F.'s third interview about the first assault and that she gave "substantially the same report about the incident of sexual intercourse" in two separate interviews with police, which she made within three weeks of the alleged assault.  Furthermore, "[d]espite the alibi witnesses testifying that they never *knew* Mr. McShan to be at the residence … alone with N.F.," there was, in fact, "ample

13

opportunity" for McShan to be alone with and sexually assault N.F., both in that residence and in McShan's car. (Emphasis added.) The ALJ concluded:

> Considering these factors and my direct observation of the child's general behavior and demeanor over the entire videotaped interview … I find that N.F.'s statement to Lynn Cook … possesses sufficient indicia of reliability and trustworthiness to qualify as admissible hearsay pursuant to the residual exception under WIS. STAT. § 908.03(24). I find that the hearsay evidence possesses substantial indicia of trustworthiness and reliability.

¶24     On appeal, McShan argues that the videotape should not have been admitted because N.F.'s statement was untrustworthy, specifically because: (1) N.F. admitted that she was part of a "criminal plot to rob and carjack him" and only reported the alleged sexual assault after this plot was discovered; (2) N.F. "exhibited signs of deceit" by not providing her social media information to Cook; and (3) N.F. waited over two weeks before reporting the alleged assault to police.

¶25     The ALJ addressed these first two arguments and concluded that, despite these potential credibility issues, N.F.'s statement nonetheless contained sufficient "indicia of trustworthiness and reliability." We cannot find that the ALJ acted arbitrarily and capriciously in this regard. It was logical for the ALJ to conclude that, even if N.F. were part of a "plot" to carjack McShan, and even if N.F. *reported* the assault because the plot was discovered, McShan still could have committed the sexual assaults. Such reasoning makes sense given that N.F.'s friends apparently planned the carjacking *because* they "were upset that McShan sexually assaulted" N.F. The ALJ also found that it bolstered N.F.'s credibility that "she did not deny knowledge of the purported plan." The ALJ further found, again reasonably, that it was not particularly relevant that N.F. did not share her social media login information, given that she provided Cook with other useful information. Finally, McShan does not explain, and we cannot discern, why an

14

approximate three-week reporting delay in and of itself detracts from N.F.'s reliability.

¶26     McShan's arguments thus center on one *potential* view of the evidence, which he holds up as the only reasonable explanation for N.F.'s allegations:  that she fabricated the sexual assault to avoid the consequences of the discovery of her carjacking plot.  But the ALJ found many other indicia of reliability in N.F.'s statement, as detailed above.  Thus, when considering the entirety of N.F.'s statement, the ALJ determined that it was sufficiently trustworthy.  We cannot find this assessment in error, especially given that McShan's theory is largely contradicted by other evidence of record.[12]  We conclude that the ALJ did not act arbitrarily, capriciously, or in bad faith in determining that the videotape was admissible under *Sorenson* and WIS. STAT. § 908.03(24).

*Substantial Evidence Supported the ALJ's Finding that McShan Violated His Conditions of Parole*

¶27     McShan's final argument is that the evidence did not support the ALJ's conclusion that he violated his rules of supervision.  On certiorari review, we determine the sufficiency of the evidence under the "substantial evidence" test.  *Von Arx*, 185 Wis. 2d at 656.  "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion."  *Cornwell Personnel Assoc. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993).  Our review is deferential:  we do not reweigh or substitute our own view of the evidence, and we will affirm the agency's decision

---

[12] According to the police department reports in the revocation packet, an employee of Wraparound Milwaukee first reported the assault, telling police "that a client of hers had been sexually assaulted" by "a man named 'Willie.'"  Police interviewed N.F. that same day.  The interview notes include N.F.'s description of the assault but do not discuss any carjacking plot. Thus, it appears that N.F. was not first arrested or suspected in a carjacking plot; instead, those details emerged after McShan's assault was reported.

even where the evidence would also support a contrary determination. ***Von Arx***, 185 Wis. 2d at 656; ***Van Ermen***, 84 Wis. 2d at 64. Thus, we will set aside an agency decision only "if a reasonable [person], acting reasonably, *could not* have reached the decision from the evidence and its inferences." ***Omernick v. DNR***, 100 Wis. 2d 234, 250-51, 301 N.W.2d 437 (1981) (citation omitted).

¶28 Considering the evidence as a whole, including N.F.'s properly admitted videotaped statement, we find that substantial evidence supported the ALJ's conclusion that McShan violated his conditions of parole. N.F. unequivocally described two incidents of sexual assault occurring in mid-February 2018, one taking place in McShan's car and another in a house on Achilles Street where McShan was then residing and where she was a frequent guest. In his defense, McShan presented testimonial evidence that he did not move to the Achilles house until March 1, 2018, and that he was never alone in the Achilles house with N.F. Even if N.F.'s testimony blatantly contradicted that of the other witnesses, the ALJ was in the best position to weigh that evidence, and we would have no basis for disturbing its conclusion that N.F. was telling the truth. In fact, however, McShan's DOC agent testified that McShan was already living in the Achilles house as of February 6, 2018. Furthermore, as the ALJ pointed out, even if McShan's witnesses *believed* that he and N.F. were never alone together, it was "impossible" for them to know this for certain. As in any household, there were periods in which these alibi witnesses were not home, or were home but not in McShan's presence. Moreover, there were no witnesses to the assault in the car, so

N.F.'s testimony on that point was unrefuted.  Substantial evidence supported the ALJ's conclusion that McShan sexually assaulted N.F.[13]

> *By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] McShan also takes issue with the ALJ's determination to revoke his parole and impose the ordered amount of good time forfeiture and reincarceration.  McShan does not present a standalone argument on this point, however, and from our review of the record, we find no obvious basis for holding that the ALJ acted arbitrarily or capriciously in this regard.  The ALJ relied on the proper facts and legal standards in detailing why alternatives to revocation were inappropriate, given the severity of the proven allegations, and why the appropriate factors under the administrative code supported the imposition of good time forfeiture and reincarceration in the amounts ordered.  *See* WIS. ADMIN. CODE §§ HA 2.05(7)(b)3., (e) and 2.06(6)(b)  Consequently, we address this point no further.  *See* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).